## No. 11,711.

### GEORGE JURGENS VS. G. B. ITTMANN ET AL.

Where, after a commercial partnership (created !by written articles of partner-
ship for a fixed time) has expired by limitation, the business is continued for
years precisely as before, such conduct evidences reciprocal consent to the
creation and the creation of a "partnership" between the parties, and the
partners are bound *inter se* and to third persons as if articles had been exe-
cuted, and the rules governing "partnership at will" control as to the dissolu-
tion of the partnership. The partnership is not one resting for its existence
from day to day by force of reiterated affirmative daily consent, but is a con-
tinuing partnership, subject to termination only after notice, and under the
rules of law governing the dissolution of partnerships. Until formally or
legally dissolved it continues.

A partnership, even at will, does not, by the weakening of the mental faculties
of one of its members, become *ipso facto*, and, prior to interdiction, dissolved
even between the partners, and still less as to the customers of the firm. Some
affirmative step has to be taken to bring about a dissolution, and the customers
of the firm are entitled to notice.

It is no more the duty of the customers of a partnership at will to keep advised
at their peril as to the mental condition of all the members of a firm than it is
for those of a partnership with a fixed period of life. They have the same right
in one case as in the other, to assume, until notified to the contrary by the
parties in interest, that the partnership continues.

There is no necessity for the consent of all the members of a firm to partner-
ship contracts. The partnership being distinct from the individuals who com-
pose it, the consent of any one of the partners is the consent of the firm. A
partnership contract, made by one of the partners of sound mind, is not affected
by weakness of mind of the other partner, especially where the other contract-
ing party is ignorant of the latter fact.

If the interest of one of two partners is jeopardized by the gradual impairment
of his mental faculties, his presumptive heirs have sufficient legal interest to
take the steps necessary for his protection.

APPEAL from the Civil District Court for the Parish of Orleans.
*Ellis, J.*

*W. S. Benedict* and *H. C. Cage* for Plaintiff, Appellee.

*James J. McLaughlin* for Defendant, Appellant.

The opinion of the court was delivered by

NICHOLLS, C. J.   Plaintiff alleges that the commercial firm of G.
B. Ittmann and Jacob Ittmann and the succession of G. B. Ittmann
are indebted to him in the sum of two thousand and thirty-one dol-

lars and fifty-six cents, with legal interest from judicial demand, and he prays for judgment against them *in solido* for that amount.

The demand is based upon the allegation that the commercial firm of G. B. Ittmann was domiciled and doing business in New Orleans from 1881 down to the time it was dissolved by the interdiction of George B. Ittmann in the summer of 1893, and during that time it was composed of Jacob Ittmann and George B. Ittmann.

That plaintiff sold and delivered to said firm goods, wares and merchandise at the dates, in the quantities and descriptions and at the prices set forth in an itemized statement and bill annexed to the petition, subject to certain credits, which, having been made, left as still due the amount sued for. That since the dissolution of the firm George B. Ittmann had died and his succession was represented by his testamentary executrix.

By the bill annexed it appears that the sales comprised in the statement began on January 19, 1892, and closed on the 23d of May, 1893.

The testamentary executrix filed an answer, pleading, after the general issue, that during the whole period covered by the dates of the alleged indebtedness of the defendant to plaintiff the said defendant (George B. Ittmann) was notoriously insane to the knowledge of the plaintiff and his agents and was incapable of contracting or of binding himself in any manner whatsoever. That said notorious insanity was patent to all coming in contact with him, and was of such nature that no one dealing with him could be deceived as to his condition. That said insanity was continuous from the month of October, 1892, until his interdiction.

That said insanity was the actual cause of his interdiction by the Civil District Court for the parish of Orleans by judgment pronounced July 12, 1893.

That co-defendant, Jacob Ittmann, had exclusive charge of the business with which the said alleged indebtedness is claimed to have arisen, and that George B. Ittmann was without capacity to bind himself in connection therewith, and that he was not chargeable therewith, neither in his succession to be held. The defendant, in view of the premises, prayed that the suit, in so far as it relates to the succession of George B. Ittmann, be dismissed, and plaintiff's demand rejected.

The District Court rendered judgment in favor of the plaintiff

against the commercial firm of G. B. Ittmann and Jacob Ittmann, and the succession of George B. Ittmann, *in solido*, for the sum of two thousand and thirty-one dollars and fifty cents, with legal interest from January 9, 1894, until paid.

The testamentary executrix of the succession of George B. Ittmann has appealed.

We find in the transcript the following agreement:

" It is agreed between counsel that the only issue in this cause is the notorious insanity *vel non* of George B. Ittmann and the claim made that his succession is not liable for the goods sold by reason thereof. The other issues are taken out of controversy by the admissions that the partnership existed as charged; that the goods were sold and delivered to the firm as charged; that the prices were just and reasonable; that the goods were used and consumed in the business of the firm, and that the price thereof has never been paid. * * *

(Signed) " W. S. BENEDICT,
" H. C. CAGE,
" *Attorneys for Plaintiff.*

\* \* \* \* \* \* \*

"Without waiving any legal deductions from the evidence adduced, above is agreed to.

(Signed) " JAMES J. MCLAUGHLIN,
" *Attorney for Succession of George B. Ittmann.*"

The meaning of the reservation made by the attorney of the succession of Ittmann is explained by the position taken by him; that the commercial partnership of " G. B. Ittman " is, so far as it was based on *articles of partnership*, terminated and expired in 1882, and from that time forward it existed only from day to day by consent. That being dependent upon its existence for consent, it necessarily could not endure beyond the time when the parties to it could consent to its continuance. That, therefore, as soon as either partner became incapable of consenting to its continuance the partnership ended *ipso facto* upon the other party being informed of his partner's incapacity. Counsel cite in support of this proposition a citation from the American and English Encyclopedia of Law, Vol. 17, pages 1102 and 1103, to the effect that " the permanent insanity of a partner is a ground for decreeing a dissolution " * * * and " if it is

a partnership at will　*　*　*　the date of notice is the date of dissolution."

On reference to the volume cited, we find Mellersh vs. Keen, 27 Beav. 236; Robertson vs. Lockie, 15 Sim. 285; 10 Jur. 533, quoted as the authorities in support of the statement made. We have been unable to find the authorities themselves, but the citation itself does not declare that a partnership at will ends *ipso facto* as contended for by counsel by the insanity of one of the partners, but refers to a notice to be given. This notice evidently must have conveyed the information that from that time forward the partnership would be held to be terminated.

We think the defendant is mistaken in making a continuance of the relations between the Ittmanns dependent upon their consent from day to day to such continuance, and in making them terminate *ipso facto* on any particular day, when such consent should not have been also affirmatively given or legally inferred to have been given on such particular day.

We are of the opinion that the course of conduct pursued for many years between the parties evidences a reciprocal consent to the creation and the actual creation of a *partnership* between them. True, no writing was passed showing its precise terms or fixing any definite time for its duration, but a "partnership" was created and existed none the less, and the parties were bound *inter se* and to third persons as if such writing had been executed and the rules governing *partnerships at will* would control. The "partnership" was one not resting on consent from day to day, and by force of such daily reiterated consent, but a *continuing partnership* subject to termination only after notice and under the rules of law relating to the dissolution of partnerships. Until formally or legally dissolved it continued as a partnership. Alba vs. Moriarty, 36 An. 680.

It is not alleged that any notice has ever been given either by the curator of George B. Ittmann, his presumptive heir, or his testamentary executrix, to Jacob Ittmann, or by the latter to the curator, executrix or heir, or by either to the public generally or the customers of the firm. Matters were permitted by all parties in interest to follow the old course. Purchases were made and bills were paid as they always were, and no one was placed upon his guard. It is not claimed that the sales which form the basis of the account sued on were effected by George Ittmann, a man of weakened mind, and

that they are open in any way to objections as to fairness or full consideration. On the contrary, defendant asserts that the business was conducted exclusively by Jacob Ittmann. That the prices charged were what the goods furnished were justly and reasonably worth, and that they were used in the business. The case comes to us freed from all complaint of fraud, deceit, overreaching or injury to George B. Ittmann. We think it very clear that if the business conducted at the " Jewel of the South," in the interval between the time when it is claimed that George B. Ittmann became so mentally incapacitated as to render him incapable of entering into a contract, and the period of his interdiction was prosperous—and we have no reason to believe that it was not—the succession of George B. Ittmann is entitled to share in the profits, for Jacob Ittmann is in no position to contest that right. His status as a partner has been fixed. Neither the curator appointed to represent the interdict during his life, nor his presumptive heir, nor his testamentary executrix appear to have repudiated the idea of a continuance of the partnership, or to have done anything by which the succession has been or will be cut off from asserting rights as under a continuing firm. For aught we know to the contrary it may at this moment be asserting such a claim. There is nothing in the pleadings going to negative its right so to do. The testamentary executrix of George B. Ittmann is the only child of the deceased. As his relative and presumptive heir she had sufficient legal interest to have protected his rights if they were jeopardized by his mental condition during the time stated. C. C. 390, 880. She took no steps in that direction until almost the last moment, nor did she take any steps leading to the protection of third parties, and if loss results it should rather fall on her than on creditors who dealt with her father in good fath and in ignorance of the alleged existing situation. C. C. 3029, 3034. Equity and justice require that this should have been done. We are of the opinion that *quoad* the customers of the commercial firm of George B. Ittmann the partnership must be held to have continued to exist certainly up to the date of the filing of the petition for interdiction—a date which fixes the plaintiff's dealings as having been made with the partnership and binding upon both partners.

It is no more the duty of customers of a partnership whose duration is at the will of the partners, at their peril, to keep advised as to the mental condition of each of the members of the partnership

than it is for those of a partnership with a fixed period of life. They have the right to assume, until notified to the contrary by the parties in interest, that the partnership continues. Art. 2876 of our Civil Code, under the heading of " *The different manners in which partnership ends,*" assigns, among other causes:

1. The expiration of the time for which such partnership was entered into   \*   \*   \*

3. The death of one of the partners, or by his interdiction   \*   \*   \*

5. The will of all the parties legally expressed, or by the will of any of them, founded on a legal cause and expressed in the manner required by law.

Article 2883 declares that the interdiction of one of the partners or his bankruptcy has, as to the dissolution of the partnership, the same effect as the death of one of the partners. Art. 2285 is to the effect " that if the partnership has been contracted without any limitation of time one of the partners may dissolve the partnership by notifying his partners that he does not intend to remain any longer in the partnership; provided, nevertheless, the renunciation to the partnership be made *bona fide,* and it does not take place un-*seasonably;*" and *Art. 2888* " that there is just cause for a partner to dissolve the partnership before the appointed time, when one or more of the partners fail in their obligations, or when an habitual infirmity prevents him from devoting himself to the affairs of his partnership, which requires his presence or his personal attendance."

Assuming the existence of a cause sufficient to have been *invoked* as a ground *for ending* the partnership, neither of the parties (nor others acting for them) availed themselves of it; neither gave the notice required by Art. 2285, nor notice to customers of the firm.

If the partnership be held to have continued, there was no necessity for the assent or consent of the different partners to the different partnership contracts. The partnership being distinct from the individuals who composed it, the consent of any one of the partners is the consent of the firm. *Jacob* Ittmann's capacity to contract being undoubted, his consent was sufficient to give validity to firm contracts independently of the consent of George Ittmann.

In Raymond vs. Vaughn, 128 Illinois, 256, the Supreme Court of Illinois held (even when one member was *adjudged insane*) that when his partner, *without notice to third persons,* continues to carry

on the business as before, there is no dissolution of the partnership, and the managing partner must account to the insane partner for his share of the profits.

If the succession of George B. Ittmann be in a position *quoad* Jacob Ittmann to claim from him up to the date of the interdiction a share of the profits (and as we have said there is nothing to show that it does not occupy such a position), it could scarcely expect to share benefits and escape responsibilities.

In addition to what we have already said, we may say that there is. nothing in the record which would lead us to believe that the plaintiff in this suit had any knowledge during the period covered by the transactions, declared on, of the alleged mental incapacity of George B. Ittmann.

This case presents another feature, which is this: If it be conceded that the partnership of George B. Ittmann terminated in October, 1892, as between the partners, the business of the former firm continued thereafter to be carried on in the name of George B. Ittmann under the active control and management of Jacob Ittmann, and at that time the latter held a power of attorney constituting him his general agent for the transaction of his business, which power antedated any impairment of the mental faculties of the principal. This power had never been revoked, and was not revoked, unless it was brought about *ipso facto* by the condition of George B. Ittmann subsequent to the paralytic stroke which he received in October, 1892.

A procuration is by Art. 3027 of the Civil Code declared to expire "by the death, seclusion, interdiction or failure of the agent or principal."

In Phelps vs. Reinach, 38 An. 547, it was held that the word " seclusion" found in Art. 3027, C. C., should be read " reclusion." That ",reclusion" means incarceration under a sentence to undergo an infamous punishment carrying civil degradation in a house of forced labor, whilst " seclusion " means a voluntary confinement or retreat from social life. That a power of attorney is revoked by the interdiction of the principal, but continues in force until the judgment to that effect has been rendered. That the mandate does not expire by the " seclusion " of the principal, or his confinement for treatment in an asylum, but it does by the " reclusion," and that ignorance of the revocation of a power of attorney will protect an innocent third

party dealing in good faith with the agent as such. See Interdiction of Dumas, 32 An. 684; Gernon vs. Dubois, 23 An. 26.

In the case at bar the testimony shows that whilst George B. Ittmann was paralyzed in October, 1892, and his mind became much impaired thereby, the effect of the illness upon his mental faculties, and in fact the character of his disease, was not known to the public at large, or to the plaintiff, Jurgens. George B. Ittmann remained at his home for several months, but knowledge of his condition and situation seems to have been confined to his relatives and intimate, personal friends. At most it was a case of "seclusion." We are of the opinion that the judgment appealed from is correct and it is hereby affirmed.