Statement of the Case.
BREAUX, C. J.
The facts are that the. father of defendant had been for many years engaged in the hotel business in the city of New Orleans. In 1884 he became the tenant of the property, corner Perdido and Caronde-let streets, in which he opened the Dene-chaud Hotel. In the year 1894 his lessor sold the property to the late A. H. Sieward, plaintiff's husband. After this purchase, Sie-ward leased to E. E. Denechaud, the father. The latter continued to occupy the property as a hotel known under his name.
The record contains two leases; one dated in 1902, and the other in 1905.
Plaintiff sued to annul both of these leases.
The first of these leases was made by A. H. Sieward .to Denechaud & Sieward. The latter (Sieward) was the son of the lessor.
The property was referred to in the lease as “Denechaud Hotel.” The term of this lease was 5 years and 5 months. This lease .ended by limitation on the 30th day of September, 1907.
We return to an earlier date to state that in the year 1890 the defendant (Justin Dene-chaud) became associated with his father in the hotel business under the firm name of E. F. Denechaud & Son, and they continued the hotel business under the name of “Dene-chaud.” The father retired from the business, and Justin F. Denechaud became by purchase the owner of young Sieward’s interest in the hotel.
It is in place to state that, although young Sieward’s name appeared as a partner, he was only nominally so; for, as appears by written declaration, the father, A. H. Sie-ward, was the real partner.
Justin F. Denechaud, having become the sole owner, in May, 1903, assumed the lease of the property made by Sieward, Sr., lessor, and became the sole tenant on terms and conditions stipulated in the lease of anterior date, except that the rental under the old contract was $685 per month and under the new contract it was $700, and under the old contract the tenant was authorized to sublet three of the stores on the property, while under the new lease he was authorized to sublet four of the stores fronting on the street named. In this act, in which Justin F. Dene-chaud assumed all of the responsibilities of a sole tenant, Sieward, Sr., lessor, granted to his new tenant the option of renewing the lease on the same terms and conditions as expressed in the act of renewal.
Two years before the expiration of the lease — that is, in October, 1905 — Denechaud, tenant, renewed the lease-for five years from September, 1907. It follows that under this renewal the term expires in 1912.
In January, 1907, Denechaud changed the name- of the business from “Hotel Dene-chaud” to “The Inn,” Justin F. Denechaud, proprietor. He advertised “The Inn” in the newspapers, and the terms at which boarders were accommodated at this place.
The Hotel Denechaud was well known. The name of the hotel was painted on the building.
It is also an undisputed fact that without the express consent of the owner of the property the name was changed to' “The Inn.”
The defendant bound himself not to sublet the three stores and barber shop. That was in the first contract of lease; while in the renewed lease it was stipulated that the defendant would not have the right to sublet by the month, except four stores.
Opinion.
This brings us to the disputed facts of the case; plaintiff’s contention being that both leases agree that the thing leased is described as the property and the premises known as the “Denechaud Hotel,” and that *723 both leases contain the usual stipulation “that the premises should not be used for any other purpose than that herein contemplated” and at the end of the lease to return said premises to the lessor in like good order as received.
Here arises the first dispute, for the defendant’s contention is that the leases are not identical; that the rent in the leases was different, and that in the new lease the lessee was authorized to sublet a larger number of rooms; that one of the rooms to be sublet was then occupied as a dining room, which the lessor had equipped for dining room purposes; and that it follows from this that the lessor did not consider the operation of the dining room as a necessary part or adjunct of the hotel. We may as well state here that there was substantial difference between the old and the new lease in the respects — one, as relates to amount of rental; and the other, as to rooms the defendant has the right to sublet.
Another point of difference between the lessor and lessee relates to the business which plaintiff alleged defendant was conducting on the place. Plaintiff’s contention is' that he (defendant) discontinued the business of “hotel,” and converted the leased premises into a mere lodging annex, a dependent or feeder to the new Hotel Denechaud.
This contention is disputed by the defendant, who introduced testimony to prove that he conducted a business pretty much the same as he had conducted before he opened the new Hotel Denechaud.
This point of difference we will take up later in deciding the issues.
Plaintiff, as another ground for setting aside the lease, alleged that defendant posted rent notices and offered to rent or sublet part or parts of the building excluded from the parts to rent or sublet.
On appeal, the defendant and appellee answered the appeal, and asked for an amendment with the view of disposing of all the issues of the case.
The following is a statement regarding an issue that the district court thought was not properly before it for decision.
For that reason the judgment appealed from did not dispose of the attack on the last lease. The ground for thus holding was that the defendant had not, at the time that the suit was brought, gone into possession under the last lease, and that in consequence the action was premature. The defendant was still holding under the old lease at the date the suit was brought. He had, however, elected that at the end of the lease he would take possession under the new lease.
By this amendment the whole question comes up as relates to the old and the new lease, as we consider that it has the effect of doing away with the question of prematurity.
The first issue is:
Plaintiff, owner of the building and of the ground on which it stands, claims a proprietary right to the name of the lessee.
Justin F. Denechaud and his father had been engaged in the hotel business in this city in the name of “Hotel Denechaud” since a number of years. Whatever right of ownership is claimed, it suggests itself at once, if the right be contested, how was the property acquired?
We will at once state that we have not found an expression on the part of any one toward showing how the right was acquired. No special reference is made to the name, “Hotel Denechaud,” showing intention to convey it, or to make it a part of plaintiff’s property. Plaintiff’s author became owner of the property without reference to name, or, if there was such a reference, it was only for the purpose of identification.
Some time after the purchase by plaintiff’s husband, from whom she gets the property, he (in the name of his son, or rather his son, in his own name, for his father) became the *725 partner of defendant in the lease. He afterward (or his son for him) transferred to the defendant, Justin E. Deneehand, who became the sole owner of the lease.
Plaintiff assumed that, having become the owner of property which her late husband bought from a third person, designated as “Hotel Denechaud,” she succeeded to the right of the name forever, and that it had become part of her property.
It seems to ns, upon that hypothesis, if plaintiff in the vicissitudes of business were to become the owner free from all claims by the defendant, she might close the business as a hotel, and yet might insist that no one has a right to contest her title to the name, for the reason that it is part of or identified with the property which she owns.
By whom was the name given?
The question is easily answered: By the tenant. Taking this as a premise, it leads to the inevitable conclusion that it was not made part of the property leased to him. This proposition in effect was considered in several decisions, and the conclusion in each coincides with those herein expressed. The lease being in the name of defendant, the following decisions are pertinent: Woodward v. Lazar, 21 Cal. 449, 82 Am. Dec. 751; 28 Am. & Eng. Ency. of Law, 388; Vonderbank v. Schmidt, 44 La. Ann. 264, 10 South. 616, 15 L. R. A. 462, 32 Am. St. Rep. 336.
Plaintiff claims that under the terms of the lease the status of the property and the right to the name were fixed in the contract.
The ready answer to this proposition is that it is manifest that the plaintiff leased to the defendant the building, improvements, and the land, and not the business of hotel keeping carried on- by the defendant, - to which she does not have the remotest right. No consideration was mentioned in the act of lease (or in the act of purchase by her late husband) for the use of the name, and nothiug was said to denote that the name was in any other use than that of the defendant. As there was no consideration, there was no alteration made by defendant in canceling the name which would justify us in annulling the lease. The writing on the wall canceled is not an alteration of the property leased. The property continued in the possession of the lessee, but not the name of the tenant.
The contract of lease, as stated by the learned counsel for plaintiff, is the sale of the right to the use of a thing. We do not think, we must say, that right extends to or includes the name of the lessee.
The further contention is urged by plaintiff that defendant cannot object to the use of the name as made, as it was not given by him, but by his father. But we have before noted that the lease was in the name of his father originally, to which he had a right as tenant and by inheritance.
Learned counsel has cited and commented upon several decisions in his brief; the first, to wit, Booth v. Jarret & Palmer, 52 How. Prac. (N. Y.) 169.
In this decision it is stated that a theater had been built by Edwin Booth, and to it the name of “Booth Theater” was given. Under that name he leased it to his brother, James Booth, who assigned his lease to Jarret & Palmer. Edwin Booth sought to have it decreed that the said tenant had no right to the name of “Booth.” Tracing back the title to its origin, in the cited ease, it is manifest that the owner of the building gave it a name, and transferred it, with the name, as indicating the interest of the buyer in the building.
While in the case here there is a substantial difference, for the owner of the hotel business gave to his business the name, and did not give his name to the lot and building in which he/conducted his business. It will be borne in mind the name of the business, and not the name of the property.
Following the principle laid down in this last-cited case in another decision, to wit, *727 Armstrong v. Kleinhans, 82 Ky. 303, 56 Am. Rep. 894, the court held that the owner and prospective lessee having joined in giving the name of “Tower Palace” to a building which was in the course of erection, they (the owner and the proprietor) were bound, and that the lessee could not claim the name or the right to use the name in designating another building as “Tower Palace.”
The difference between that decision and the present before us for determination consists in the fact that the lessee had consented to the name given to the property. Here there is no such consent. Moreover, in the cited ease it was an impersonal name, to which neither of the parties had any special right. He, the said lessee, was properly held hound by his own act. We have seen that in the case here the lessee had given the name to his personal business, and as such it had come in possession of his son, as tenant.
In Pepper v. Labrot (C. C.) 8 Fed. 29, another of the decisions cited by counsel for plaintiff, it was decided that a tenant cannot apply to a building a particular name intended to be descriptive of the place without consent of the owner, as distinguished from a name adopted as a trade-mark, and then at his own pleasure change its original identification and apply the name to another and distinct locality. This case relates to a trade-mark, which the parties in the cited case had by their own acts localized. The whisky manufactured had become identified with the place in such a way that Pepper’s rights to use the trade-mark, were confined to the building. The case was decided on the theory that the parties had made whisky, trade-mark, and place one and inseparable, and that Pepper could not go elsewhere and manufacture that particular brand, for he had localized the whisky manufactured under that brand. For the purpose of identification, and in order that the consumer might know that he had the brand, it was made part of the locus in quo.
The Vonderbank decision, cited supra, was also cited as sustaining plaintiff’s action.
The plaintiff cannot get the least support from this decision, for the defendant’s case is much stronger than the cited case (Von-derbank), in which the trade-mark had been transferred; and, although the good will had been transferred, it did not include, according to- that decision, the name of the tenant. In the case before us for decision we have already noted that no trade-mark was ever transferred. We must say, in conclusion on this point, that one cannot very well be held to have consented to the use of his own name forever without the least agreement to that effect.
In the second place, the contention is urged on the part of plaintiff that the defendant, having changed the name, has thereby indicated his intention to change the use for which the property had been leased.
Although the defendant painted “The Inn, Denechaud, Proprietor,” in place of “Hotel D.énechaud,” the place is sufficiently conducted as a hotel to protect the lease against an action of nullity. The difference between “inn” and “hotel” is not very great. The terms have come to'be regarded as synonymous, as said by Wandell in Law of Inns and Hotels, p. 15. •
It follows from the foregoing definition that defendant has not very much departed from the original agreement by substituting the word “inn” for “hotel.” In that one act we have not found good cause for complaint. The inn is a house in which the traveler is furnished with everything for which he has occasion while on the way. The traveler may remain as long as he pleases in the inn, or he may leave in a short time. It is an inn as long as he remains in the inn and makes no contract for any length of time. The hotel, as generally understood, looks to more permanent guests. The text-writer above cited says that “hotel,” strictly speaking, means a house in which travelers *729 and other casual guests are provided with lodging, but not with food.
That is not the general understanding in this country.
The definition of “hotel” by this writer leaves but little to plaintiff for complaint; for defendant, under the advertisement of an inn, carries out the purpose of a hotel. In either case, whether considered as a hotel or an inn, accommodation is provided for guests, but not board. The stopping place of defendant is conducted in accordance with the idea conveyed by the words, “European plan,” as distinguished from the “American plan.” He does not provide meals for his guests.
The testimony is that the inn in question has a larger number of guests and larger revenues since than it had any time that meals were furnished to guests. Defendant, as his own witness, testified that the revenues from the dining room do not pay. At first blush it may seem a matter of indifference to plaintiff; for generally, after suit, the respective parties are indifferent as to whether his opponent realizes any profit for his own account on the property involved. None the less, in deciding the issues, we will not avoid noticing that the value of the property is not impaired by closing the dining room; but, on the contrary, the inn, without the dining room, is paying handsomely. If it pays defendant better to operate the hotel on the European plan, as he understands it, there is nothing in the lease to prevent this. He is bound at the end of the lease to return the property in the condition in which he has received it. There is no indication at this time that he has made any such change as will stand in the way of his delivering the property in accordance with agreement, including the dining room and all of its appurtenances.
Something has been said in argument about repairs and changes on the building. This complaint defendant seeks to meet by testifying that repairs were made jointly at times, but generally for account of plaintiff, in accordance with an agreement that defendant would pay and did pay 8 per cent, interest on the cost of repairs. For that reason we take it that repairs do not affect the issues either way.
The destination in the use of this building is not changed to a prejudicial extent, in so far as plaintiff is concerned; at any rate, not to such an extent as would justify us in anul-ling the lease. At this time, with the testimony before us, we must decline to grant plaintiff’s demand.
The late Mr. Sieward, husband of plaintiff, was frequently at the place and never objected to the use as made of the building. In summer, the dining room was closed, and he was aware of the fact, and never in the least objected.
If plaintiff’s view be correct, she would be justified in claiming judgment annulling the lease for the least failure to provide board for the guests. This was not the intention of the original lease.
The right to dissolve a lease is subject to judicial control according to circumstances. Prude v. Morris, 38 La. Ann. 769; Troplong Louage, 316; Duvergier Louage, 107.
The last ground of plaintiff for annulling the lease is that defendant offered to let out part of the building.
We have seen that in accordance with the terms and conditions of the lease the defendant was authorized to lease part of the property. Besides, even if the offer to let included other apartments than those defendant was authorized to let, the mere offer, unaccepted by any one, is not sufficient to set aside the lease. Jurgens v. Ittman, 47 La. Ann. 372, 16 South. 952; Lalaurie’s Heirs v. Woods, 8 La. Ann. 366.
Regarding prematurity:
There is no remaining issue on that ground, for defendant’s answer on appeal has placed *731 the whole case at issue, and we have considered each of the questions presented, and have found no ground upon which to grant relief at this time, in view of the circumstances and facts of the case.
For reasons assigned, the judgment is affirmed.