S. S. ROSENTHAL

 VS. No. 8392.

G. W. PRUSTMAN,
 Appellant.

October 31st, 1921.

S. S. ROSENTHAL

VS. No. 8392.

G. W. PRUTSMAN,
 Appellant.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit by a lessor against the lessee for can-
callation of a lease for making another use of the property
than that specified *in* the lease.

Petitioner alleges that by an act under private signa-
ture he leased to the defendant Prutsman the upper duplex apart-
ment No. 2838 St. Charles Avenue; that by said lease it was pro-
vided that:

> "the premises herein leased are to be used for the fol-
> lowing purposes, Dwelling x x x; Lessee is obligated to
> make no x x x use of the leased premises for a purpose
> other than *that* stipulated herein; x x x should the lessee,
> in any manner, violate any of the conditions of this
> lease, the lessor hereby expressly reserves to himself
> the right of cancelling said lease, without putting the
> lessee in default; the lessee hereby assenting thereto
> and herein waiving all legal notices to vacate" x x x;

that in violation of said lease the wife of the defendant is,
and for some times past has been, conducting regularly in the
said leased premises the business or profession of Christian
Science practioner or healer for compensation, and that her
patients, at her invitation, customarily and frequently resort
to the said leased premises for treatment; all to the knowledge
of the said Prutsman and with his approval and consent and by
his instigation; that such use of said premises constitutes a
violation of the said lease which under the law and under the
stipulations of the said lease, entitles your petitioner to the

cancellation thereof. Plaintiff prays for judgment condemning the defendant to vacate the leased premises.

The defendant admitted the lease, and further answering admitted ,

> "that Mrs. Prutsman. his wife, receives in their residence, among other visitors, friends who, with her, believe in "Christian Science" and that she has in the past and does now, when desired by the callers, administer treatment to them, sometimes for compensation and sometimes without, but he denies that her action in so doing is a violation of the lease in any particular, and avers that it would be a violation of Article I Section 4 of the Bill of Rights of the Constitution of the State of Louisiana to attempt to deny to your respondent or his wife the right to practice "Christian Science" or the Art of Healing, which is but the practice of her religion or Christian faith".

Defendant prayed that plaintiff's petition be dismissed.

There was judgment for the plaintiff and defendant has appealed.

There is no allegation that the practices of the defendant caused damage or injury or a nuisance. Testimony on that subject was excluded on plaintiff's objection.

The burden of proof is upon the plaintiff to show a clear case of violation of the lease. The lessee must be given the benefit of any doubt. The lessor, like the vendor, must explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him. C. C. 2474 (2449); 105 La. 294 (303); 30 A. 255; 30 Dalloz Rep. Leg. p 295; p 313 $ 147; 1 Domat p 209 $ 10; 25 Laurent p 110 $ 99; 3 Duvergier p 23 $ 26; 18 Baudry-Lac p 28 47; 1 Guillonard p 105 $ 85; 1 Pothier Obligatus p 67.

"There is a familiar canon of construction that all

contracts, including leases of every description shall
be most strongly construed against the grantor, and that
if there be any doubt or uncertainty as to the meaning
of any such lease it shall be construed most strongly
in favor of the grantee". 24 Cyc 915 (c).

It is also general law that forfeiture of contracts are
not favored. In the case of Scibetta vs Marciante No. 7974
this Court said:

"Forfeiture of contracts or leases are not encour-
aged by the Courts, and will be enforced only when the
right thereto is clear beyond a doubt both of fact and
of law".

This opinion was in pursuance of the jurisprudence of
this State. 6 A. 279, 566; 12 A. 823; 17 A. 321; 21 A. 21,23;
49 A. 1549; 50 A. 379 (384); 1 Baudry-Lac p 404 772.

"Forfeiture by acts of the parties to a lease x x x
because of a breach of a covenant or condition or wrong-
ful act of the tenant are not favored by the Courts x x
and a stipulation or covenant permitting a forfeiture
before the lease would otherwise terminate will be con-
strued most strongly against the lessor". 24 Cyc p
1347 (b); 18 A. & E. E. L. p 371, 378.

The right of a lessor to dissolve a lease for putting
the premises to a use other than the one intended or specified
in the lease is not absolute; it is left to the discretion of
the Court. 39 A.769; 120 La. 730; 30 Dalloz Rep. Leg. p 348
No. 281, 300, 301; same Vol 10 Supplement p 174 170, 178;
4 Aubry & Rau p 83; 1 Baudry Lac p 406 No. 774; 3 Duvergier p
381 401; L Guillonard 203; 2 id 527; 25 Laurent p 287, 288
264; Troplong Louage p 410 316.

The Articles of the Code governing this case are as fol-
lows:

C. C. 1926 (1920) "On the breach of any obligation to do
or not to do, the obligee x x may require the dissolu-

tion of the contract &c ".

C. C. 2046 (2041)."A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case x x the party complaining of a breach of the contract of the contract may either sue for its dissotion & c ".

C. C. 2710 (2680)."The lessee is bound: 1o To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease. x x x" C. C. 2711 (2681). "If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease & c".

In interpreting these Articles our Supreme Court has decided that premises rented for a store could not be used as a kitchen 7 R. 205: that a building erected to serve as a boarding and lodging-house could not be converted into a coffee-house. 39 A. 766.

In France it has been held that a building rented as a dwelling could not be occupied as a gambling house, or a house for immoral purposes, nor for a restaurant, nor for a hotel, nor for a coffee-house, nor for a club, nor for a blacksmith or locksmith shop, nor to carry on a commercial business, nor to change a concert hall into a coffee-house. Our researches, however, have failed to produce a single case in which the lease of a building to be used as a residence or dwelling would be violated by being occupied, in part, by a physician, or lawyer, or other person following a profession or occupation inviting the visit of clients, patients, or customers.

In the case of Moreira vs Heckman No. 7842 this Court said:

"A dwelling-house is a place for the accommodation and shelter of human beings, and the householder may

admit into his house whomsoever he pleases even board-
ers and lodgers; nor does his home thereby cease to be
his private dwelling house".

A person who receives a boarder in her home cannot be
said to be a boarding house keeper. 22 A. 316.

A house remains a residence when the keeping of boarders
is only an incident; but becomes a boarding house when the keep-
ing of boarders is the main purpose.1 L. R. A. N. S. 962.

The only witnesses who testify to the use of the rented
premises are the plaintiff himself and two detectives employed
by him to inquire into the actions of the defendant's wife.

The plaintiff testified that lots of people rang at the
door bell and asked to see the lady doctor or Mrs. Prutsman; his
son lives in the same house and is a physician, and many people
call to see him; his sign is on the house.

One of the detectives is a woman; she called on the
"Christian Science lady" to be treated for a headache; there
were others there; she went alone once, and another time with
a lady; she paid one dollar for each of two treatments; the
"Christian Science lady" told her about Christian Science, ex-
plained to her; she told her what Christian Science would do for
her and to forget about her trouble, and that the headache would
get all right.

The other detective is a *male*; he called on Mrs. Prutsman
one afternoon to receive treatment and she gave him instructions
in Christian Science: he went back the next day and got the other
treatment; the second day there was another patient waiting; he
did not go into the room, but waited in the hall.

We do not see how it can be said that the actions of the
defendant detailed above can be construed into making another use
of the property; it still remained a dwelling and the receiving
of visitors or patients was only incidental. We have nothing to
do with the question whether the defendant's acts were part of a
religion or of a business; the question is did that "dwelling"

lose its character as such by reason of defendant's actions? If defendant's contention was correct then a lawyer could not receive his clients, a physician his patients, or an artist his customers, in a house occupied by him as his dwelling and rented by him as such, without violationg his lease. We believe that such would be too narrow a construction to give to the Articles of the Code especially in the absence of any precedent, and in absence of any injury to the property. We take in consideration also the fact that the plaintiff's son is a physician, resides in another part of the same building, has his sign as such affixed to the front of the house, inviting the visit of patients, and, in the language of plaintiff, as a witness, receives "frequent calls". There is no allegation that the defendant is in competition with him. There is no doubt that the plaintiff might have stipulated that there should be in his building no professional man, no artist, no Christian Science Healer, and even that no one should ever have access to the building except the members of defendant's family. But he has not done so. In the absence of such a clause the defendant was free to receive any persons he chose, whether it was socially or in business. 6 A. L. R. 465.

In the language of our Supreme Court in Sieward vs Denechaud 120 La. 720 (730):

"The destination in the use of this building is not charged to a prejudicial extent, in so far as plaintiff is concerned; at any rate, not to such an extent as would justify us in annulling the lease. At this time, with the testimony before us, we must decline to grant plaintiff's demand".

It is therefore ordered that the judgment herein be reversed and that there now be judgment in favor of defendant rejecting plaintiff's demand at his cost in both Courts.

October 31st, 1921.