124 So.2d 161 (1960)
J. A. SIMMONS, Plaintiff-Appellant,
v.
PURE OIL COMPANY, Defendant-Appellee.
No. 9311.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1960.
Rehearing Denied December 1, 1960.
Certiorari Granted January 9, 1961.
*162 Tucker, Bronson & Martin, Shreveport, for appellant.
Vinson, Elkins, Weeks & Searls, Houston, Tex., L. D. Napper, Ruston, Hargrove, Guyton & Van Hook, Shreveport, for appellee.
GLADNEY, Judge.
This suit was brought by a lessor seeking dissolution and cancellation of an oil, gas and mineral lease covering certain described property of plaintiff, situated in Lincoln Parish, Louisiana. It is one of seven companion cases pursuing similar remedies pertaining to land in Sections 32 and 33, Township 19 North, Range 3 West in said parish. All of the suits were dismissed by the trial court on exceptions of no cause or right of action and separate appeals were taken. There is no substantial distinction in the material facts of these cases and our ruling in the instant case will necessarily govern the related cases.
On October 10, 1956, plaintiff executed an oil, gas and mineral lease in favor of George E. Woods, defendant's assignor, covering the following described property situated in Lincoln Parish, Louisiana, to-wit:
"That certain tract or parcel of land located in SE/4, Section 32, Township 19 North, Range 3 West, containing 60 acres and described as follows: Beginning at the NE corner of NW/4 of SE/4 of Section 32, Township 19 North, Range 3 West, at a point on the Branch known as `Second Branch', thence along said Branch in a Southwesterly direction (general course South 45 degrees West) to the intersection of said Branch with the Claiborne Road, a distance of approximately 18 chains, thence along the Claiborne or Wire Road in a Southeasterly direction to the intersection of said Road, with a line running due North and South through the SE/4 of Section 32, Township 19 North, Range 3 West, and 8 chains West of the East line of Section 32, thence due North to the North boundary line of NE/4 of SE/4, of said Section 32, approximately 35.5 chains, thence West along said North boundary line of NE/4 of SE/4, Section 32, Township 19 North, Range 3 West, to the point of beginning, containing 60 acres."
Previously, effective March 31, 1949, the Commissioner of Conservation of the State of Louisiana issued his order No. 164, defining the Ruston Field and establishing rules and regulations governing the exploration for and production of gas and condensate from the Cotton Valley "D" Sand. That order provided for the establishment of 640 acre drilling units, stipulated that not more than one well should be located upon a unit, and required that the unit well be located within 330 feet of the center of the unit, subject to exceptions made after notice and hearing. By a supplementary order effective December 16, 1953, the pattern of drilling units for the "D" Sand of the Ruston Field was extended to include, inter alia, the East One-Half of Section 32 and the West One-Half of Section 33, Township 19 North, Range 3 West. That unit embraced plaintiff's above described land. During November, 1958, plaintiff's lessee, Pure Oil Company, applied to the Commissioner of Conservation for a permit to drill a well 1,270 feet south and *163 1,470 feet west of the Northeast corner of Section 32, Township 19 North, Range 3 West, and in connection therewith requested the Commissioner to hold a hearing respecting the granting of the permit. The Pure Oil Company gave as reasons for the requested exception location that: (1) The surface conditions in the prescribed location would entail considerable unnecessary and avoidable expense in the drilling of a well; and (2) a well drilled at the exception location would be more likely to be productive from the "D" Sand. A hearing was held at Baton Rouge on December 17, 1958, and the defendant presented geological evidence to the effect that a barrier existed between production in the Ruston Field and the productive area of the proposed location. This information roughly placed the barrier near the east and west center of Sections 28 and 29 of Township 19 North, Range 3 West, the "D" Sand being absent north of said "pinch-out" line. At the hearing defendant stated that if the contemplated well to be known as the Holloway well, should be a producer, reformation of drilling and production units would be requested. Following the hearing the Commissioner of Conservation issued his Order No. 164-A-3 granting the exception location. The "Findings" of said order contained the following provisions:
"That there may exist a barrier between production in the Ruston Field and the productive area of the present unit comprising the East Half (E 1/2) of Section 32 and the West Half (W 1/2) of Section 33, Township 19 North, Range 3 West, and the drilling of the well at the exceptional location will, in the event of the proof of such barrier, allow for the reformation of drilling and production units around such well."
On March 13, 1959, Pure Oil Company requested that the Commissioner call a public hearing for the purpose of receiving evidence relative to the dissolution of certain units previously established in the Ruston Field, including that upon which the Holloway well was located, and for the further purpose of creating new 640 acre drilling and production units for the "D" Sand, each of said units to be composed of the N½ of a governmental section and the S½ of the adjacent governmental section to the north. The proposed dissolution and reformation of units would place the Holloway well in a drilling unit composed of the N½ of Section 32 and the S½ of Section 29, Township 19 North, Range 3 West. In its request defendant advised the Commissioner that although the Holloway well had not been finally completed, the results indicated a commercial well in the "D" Sand, and definitely confirmed the geological information tendered at the hearing held on December 17, 1958, to the effect that a barrier existed between production in the Ruston Field and the Holloway well. Pursuant to defendant's request, a hearing was held on April 21, 1959, at which plaintiff appeared through counsel and objected to the dissolution of the existing unit upon which the Holloway well was located, and further objected to the formation of the new units suggested by his lessee. As the result of this hearing the Commissioner of Conservation issued on May 11, 1959, his Order No. 164 F establishing a pattern of drilling units similar to that proposed by the Pure Oil Company, but deviating therefrom to the extent that the unit assigned to the Holloway well was composed of the North 3,300 feet of Section 32 and the South 1,980 feet of Section 29, Township 19 North, Range 3 West.[1]
Plaintiff's cause of action is predicated upon certain allegations of the petition to the effect: that prior to its application for an exception location, the lessee had formulated the intent to request the Commissioner of Conservation to reform the unit on which *164 the Holloway well was located, and other adjacent units, according to a different pattern, which intent was contingent upon the proposed Holloway well being a producer; that this intent was not disclosed in defendant's application to the Commissioner or in the notices of the latter in calling said hearing; and that not until the hearing was there any indication of defendant's intended course of action. Plaintiff asserts that about a week prior to the hearing for the exception location he was requested by a representative of the defendant to assist defendant in procuring the desired order by signing a letter demonstrating his acquiescence in the proposed exception location; that on that occasion plaintiff asked the purpose of the hearing and whether or not it would affect his interest or lands from the standpoint of being in the unit; that said representative not only failed to advise plaintiff of its intent to request reformation of the units should the well eventually be successful, but also affirmatively represented that the drilling of the well at the exception location would not affect defendant's interest or lands as respects being in the unit. Plaintiff then executed the requested letter wherein he stated that he had "no objection to this location". Plaintiff charges that the letter to the Commissioner which he signed on December 10, 1958, was procured from him by reason of defendant's misrepresentation and failure to make a full disclosure, that said letter was obtained for the purpose of avoiding any objection by petitioner to the granting of the exception location, and that except for such misrepresentation and concealment he would have objected to the granting of defendant's request for the exception location. The petitioner asserts that the new pattern of units prevents his participation in production from the Holloway well and has the effect of depriving petitioner of a proven productive well.
In consequence of the aforesaid alleged circumstances plaintiff charges that defendant's actions constituted fraud, violated the obligations and duties imposed by the oil and gas lease involved herein, and constituted a repudiation of the defendant's obligation to operate the leased premises as a reasonable and prudent operator. Finally, it is asserted that plaintiff has been damaged by being excluded from participation in the production of a producing well, and by the depreciation in the market value of his mineral interest.
Obviously, appellant's grievance rests upon the contention that he has been unjustly precluded from sharing in the Holloway well by actions of the defendant which culminated in the reformation of the unit in existence at the time the well was drilled. This contention depends upon the rights of the parties as reflected in the provisions of the lease, and the effect to be given to orders issued by the Commissioner of Conservation. The lease expressly confers on lessee the right to conventionally pool, in whole or in part, all or any portion of the acreage covered by the lease, and to operate the lease premises in compliance with regulations administered by governmental authorities.[2] *165 The Commissioner of Conservation is specifically granted the authority to establish drilling units and to formulate temporary or tentative spacing rules and drilling units in new fields. LSA-R.S. 30:4, subd. C (13). The Commissioner is also authorized to permit drilling other than at the approximate center of a drilling unit where such exception can be shown to be reasonably necessary. LSA-R.S. 30:9, subd. C. After the completion of the first well in a field as a producer, the Commissioner is confronted with the task of determining the well spacing program to be followed, and his determination is largely dependent upon the nature and characteristics of the producing formation. The minerals in one reservoir usually have characteristics of the producing formation which are different from those of any other reservoir.
Plaintiff has not made direct attack upon the validity of orders of the Commissioner which culminated in the creation of a new unit for the Holloway well from which plaintiff's land was excluded. It is significant, however, that the successful completion of the Holloway well brought about a condition which was not contemplated when the Commissioner established drilling units for production from the Ruston Field, for the Holloway well encountered an entirely different reservoir. Although production from the Holloway well was from the same formation, the Cotton Valley "D" Sand, as previously encountered in the Ruston Field, the two reservoirs were separated by the barrier referred to above. Under statutory authority it clearly was proper for the Commissioner after hearing and upon sufficient geological data, to determine that new drilling units should be established in lieu of those erroneously predicated upon production from the same gas reservoir of the Ruston Field. LSA-R.S. 30:11 provides that any person adversely affected by any rule, regulation or order of the Commissioner may, upon exhaustion of his administrative remedies, seek relief in the courts of this state. The Supreme Court held in O'Meara v. Union Oil Co. of California, 1947, 212 La. 745, 33 So.2d 506, 509, that the Legislature has delegated to the Commissioner of Conservation the authority to find the facts upon which the law is to be applied. Furthermore, it has been held by the Supreme Court of this State that an order of the Department of Conservation increasing the size of drilling units theretofore established by an order of the Department, in a given oil or gas field, may supersede private contractual provisions predicated on previous orders of the Department. Alston v. Southern Production Co., 1945, 207 La. 370, 21 So.2d 383, 386; and Monsanto Chemical Co. v. Hussey, 1958, 234 La. 1058, 102 So.2d 455. The following comment appears in Everett et al. v. Phillips Petroleum Co., 1950, 218 La. 835, 51 So.2d 87, 91:
"And, conformable to this fundamental tenet of the plenary power of the State in the conservation of natural resources, it has been many times decided that, where private contractural rights are in conflict with the valid orders of the Commissioner of Conservation, the former must yield and are superseded by the latter. Hood v. Southern Production Co., 206 La. 642, 19 So.2d 336; Placid Oil Co. v. North Central Texas Oil Co., 206 La. 693, 19 So.2d 616; Hardy v. Union Producing Co., 207 La. 138, 20 So.2d 734; Alston v. Southern Production Co., 207 La. 370, 21 So.2d 383; Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So. 2d 10; Hunter Co. v. Vaughn, 217 La. 459, 46 So.2d 735 and LeBlanc v. Danciger Oil & Ref. Co., La.Sup., 49 So. 2d 855, handed down on November 6th 1950 and not yet reported." [3]
*166 With the foregoing legal principles in mind we turn to the errors assigned to the judgment sustaining the exceptions of no cause or right of action. These are that the judge a quo was in error in: (1) failing to hold that in resorting to the Commissioner of Conservation for orders affecting the rights of plaintiff under the lease contract, the obligation was imposed upon the lessee to promote the mutual advantage and profit of the lessor and not to exclusively serve its own selfish interest; (2) holding that the provisions of the Conservation Act were conclusive authority for the actions of appellee and that it negated any duty owed the lessors by virtue of the lease contract; (3) failing to hold that in the instant case, as well as in suits Nos. 9311, 9312, 9313, and 9314, Simmons v. Pure Oil Co., ___ So.2d; ___; Kilgore v. Pure Oil Co., ___ So.2d ___; Wiltcher v. Pure Oil Co., ___ So.2d ___, the letters procured and utilized by defendant to secure the exception location were procured by fraud and misrepresentation and constituted a breach of good faith imposed upon defendant by the lease contract; (4) failing to hold that this defendant was guilty of manipulating the processes of the Commissioner of Conservation to its own advantage and to the detriment of its lessors.
As we understand the foregoing assignments of error, the whole tenor thereof is that appellee has violated its obligation under the lease contract to utilize the leased premises as a prudent administrator.
Briefly, the complaint is to the effect plaintiff's lessee resorted to artifice to prevent opposition to a permit for the exception location, which was in furtherance of a plan to change the existing units for its own advantage. Explaining the contention, counsel for lessor argues the lessee knew that unless it could obtain such a permit it would not thereafter be successful in prevailing upon the Commissioner of Conservation to alter the units. It is further charged that if the new units could be obtained, the lessee would embrace therein certain acreage condemned by a dry hole.
Doubtless it is an obligation of the lessee to operate the lease premises to the mutual advantage of itself and the lessor. LSA-C.C. Art. 2710; Prince v. Standard Oil Co. of Louisiana, 1920, 147 La. 283, 84 So. 657; and in a proper case a lessor may maintain an action for dissolution of the contract of lease against his lessee who has failed to act as a prudent administrator of the lease premises. LSA-C.C. Arts. 1926, 2046, 2711 and 2729. Bloom v. Southern Amusement Co., 1955, 228 La. 44, 81 So.2d 763.
Manifestly, every act of omission or commission, no matter how small, will not justify cancellation of a lease on grounds of imprudent administration. The dereliction of duty must be of a substantial nature and cause injury to the lessor. Following a careful examination of the allegations of plaintiff's petition, it is our finding that the acts herein alleged as constituting misconduct on the part of the lessee are not sufficient to justify the dissolution of the lease.
This holding is supported by the following circumstances: The alleged acts constituting misrepresentation and concealment related only to evidence to be offered at the hearing for the exception location. This was an open hearing with many other lessors besides plaintiff present. Plaintiff was not prevented from attending, recalling his letter and presenting opposition. It was so stated at the hearing and subsequently further *167 disclosed in the findings of the Commissioner of Conservation upon issuing his order for the exception location, that should the Holloway well prove the existence of a barrier separating the Ruston Field, the exception location would allow for the reformation of units around the Holloway well. Plaintiff must be charged with knowledge of this disclosure.[4] Although he did not elect to contest Order No. 164 A-3, his right to resist the enforcement of any subsequent order providing for such reformation was preserved. Actually, at the hearing held prior to the issuance of Order No. 164 F plaintiff was represented by counsel who did oppose the issuance of the order. It must be observed that the Holloway well confirmed the existence of a barrier which revealed that the reservoir of oil encountered by the Holloway well was separate from that in the Ruston Field. In consequence of this it was the statutory duty of the Commissioner of Conservation to take steps to prevent waste and protect the correlative rights of all interested parties for the purpose of insuring to each its fair share of production from the common reservoir. The initial delineation of the drilling units was predicated on geological and engineering data disclosed by production from the "D" Sand in the Ruston Field. The new reservoir encountered by the Holloway well made it necessary for the Commissioner of Conservation to consider the establishment of new drilling units. This was a matter peculiarly for his judgment and we must abide by that decision, especially as plaintiff elected not to make a direct attack upon it. Needless to say, lessor is presumed to have been conversant with the law. Our conservation statute, LSA-R.S. 30:1 et seq., clearly grants to the Commissioner of Conservation the authority to reform drilling units when facts are revealed such as are set forth in the petition. Authority of the lessee to petition for an exception location and reformation of units, in our opinion, can be found in paragraph 4 of the lease, as well as in provisions of the Conservation Act aforesaid.
As heretofore set forth, it is our holding that the acts of which complained do not establish adequate reasons for dissolving the lease and the judgment of the trial court, sustaining the exception of no cause or right of action, is affirmed at appellant's cost.
BOLIN, Judge (dissenting).
I feel compelled to dissent from the majority opinion rendered herein and to assign my reasons for so doing.
I have the utmost respect for the views expressed in the majority opinion, and it is evident from a reading of same that it was rendered after giving much consideration to the complex problems presented.
However, I feel that in being so diligent in its effort to give consideration to the many issues raised by the defendant, this court and the one below thus became lost in a web of inconsequential matters and thereby fell into the common trap of converting a simple question into a complicated problem.
In this writer's humble opinion this case presents only one question, to-wit: Did the lessee, under the oil and gas lease in question, owe an obligation to the lessor to be honest with him when it made an application for an exceptional location; or is it legally excusable for such lessee to not only withhold the truth, but to deliberately make misrepresentations? This case is before us on an exception of no cause of action and we must decide same on the allegations as contained within the "four walls" of the pleadings. The majority opinion herein has correctly stated that the plaintiff has alleged that the original application was made by the defendant to the Conservation *168 Commissioner based on false representations by the oil company. To me, this is the key to the case and should be sufficient to entitle the plaintiff to his day in court. When the hearing was held for the exceptional location, the mineral owners were not present and made no objection and, therefore, the lessee had a free hand to present only its side of the case. From the evidence presented, the Commissioner correctly granted an exceptional location; but the damage was alleged to have been done by the false representations by the lessee before the original hearing was had. The sequence of events after this is immaterial to the issue before this court.
This is not a collateral attack on any of the orders of the Conservation Commissioner. To the contrary, what the lessor is complaining about is that by the false representation and the "scheme" of the lessee, his doom was sealed when he was misled into not being present at the original hearing.
I deem it unwise for a court to pronounce in effect to a landowner and lessor:
"that we realize you were excluded from the original hearing because of fraud on the part of the lessee, but it would not have made any difference in the outcome, if you had been there."
If it would not have made any difference, why did the lessee seek by false representation to keep them from attending?
Also the majority opinion gives a detailed discussion as to the provisions of the lease itself which provides for an application to be made to the Conservation Commissioner for an exceptional location. I respectfully take the position that this is conceded and makes no difference at all, because this provision certainly did not envision the lessee would make such application predicated upon fraudulent representations to the lessor.
The same position should be taken as to the discussion relative to the geological data supporting the reformation of the drilling units. All of this information was obtained at the original hearing for the exceptional location where, so the plaintiff alleges, he was not properly represented because of the false representations of the defendant.
The allegations of the plaintiff's petition set forth some serious charges of fraud and misrepresentation on the part of the defendant. He has alleged that it was of such a nature that the leases should be canceled. While I do not minimize his difficulty in proving these charges, I feel he should have his day in court. If the plaintiff is not able to make out his case, the only harm that could result would be to burden the defendant with the necessity of going to trial on the merits. In light of the serious allegations of fraud, some of the elements of which are evident from the pleadings, I do not feel this would be an unreasonable burden on the defendant.
I respectfully dissent.
NOTES
[1] This deviation from defendant's proposed pattern of units had the effect of excluding certain property in Section 29 upon which Arkansas Louisiana Gas Company had previously drilled a well and abandoned same as non-productive in the "D" Sand.
[2] Section 4 of the lease provides: "Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease, or any portion thereof as to oil and gas, or either of them, with other land, lease or leases in the immediate vicinity thereof to the extent, hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said leased premises, in compliance with the orders, rules and regulations of State and Federal governmental authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas from said premises. * * * Lessee under the provisions hereof may pool or combine acreage covered by this lease, or any portion thereof as above provided as to oil in any one or more strata and as to gas in any one or more strata. * * * The pooling in one or more instances shall not exhaust the rights of the Lessee hereunder to pool this lease or portions thereof into other units. * * *"
[3] In the Everett case it was argued by counsel that the orders of the Commissioner "`were based entirely on testimony * * * which was misleading, and clearly and patently did not conform with the facts existing at the time'. There is no merit whatever in this attack for, as shown above, Act No. 157 of 1940 has been sustained as to all constitutional challenges. And, insofar as it concerns the claim that the Commissioner's orders are based on misleading evidence, counsel cannot, in this proceeding, assail those orders which are prima facie valid. The remedy, where it is contended that the Commissioner's action is arbitrary, is to obtain court review in a suit for an injunction against the Commissioner after all administrative remedies have been exhausted. See Section 11 of Act No. 157 of 1940 and O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506." 51 So.2d at page 91, note 4.
[4] "All rules, regulations, and orders made by the commissioner shall be in writing and shall be entered in full by him in a book kept for that purpose. This book shall be a public record and shall be open for inspection at all times during reasonable office hours. * * *" LSA-R.S. 30:6, subd. E (Supp.1959).