129 So.2d 786 (1961)
241 La. 592
J. A. SIMMONS
v.
PURE OIL COMPANY.
No. 45466.
Supreme Court of Louisiana.
April 24, 1961.
Rehearing Denied May 29, 1961.
*787 Tucker, Bronson & Martin, H. M. Holder, Shreveport, for plaintiff-appellant-relator.
Vinson, Elkins, Weems & Searls; Hargrove, Guyton & Van Hook, Shreveport, for defendant-appellee-respondent.
McCALEB, Justice.
This suit, here on certiorari, is a companion case to six others currently pending on applications for rehearing in the Court of Appeal, Second Circuit, awaiting its outcome. [Wright v. Pure Oil Co., 130 So.2d 150; Simmons v. Pure Oil Co., 130 So.2d 148; Kilgore v. Pure Oil Co., 130 So.2d 148; Wiltcher v. Pure Oil Co., 130 So.2d 149; Pankey v. Pure Oil Co., 130 So.2d 149; Goodwin v. Pure Oil Co., 130 So.2d 150.]
Plaintiff is the owner of a 60-acre tract located in the Southeast ¼ of Section 32, Township 19 N., Range 3 W., Lincoln Parish, which was leased by him on October 10, 1956 to George E. Woods for oil, gas and mineral purposes, the lease being subsequently assigned to defendant herein, Pure Oil Company. The object of plaintiff's demand is for a cancellation of the oil and gas lease due to an alleged fraudulent breach of contract, it being contended that defendant oil company violated the implied obligation imposed upon it by Article 2710 of the Civil Code "* * * To enjoy the thing leased as a good administrator, *788 according to the use for which it was intended by the lease."
In the district court, plaintiff's suit was dismissed on an exception of no cause of action and on review, the judgment was affirmed by a three-to-one decision of the Court of Appeal, Second Circuit, on the ground that plaintiff had not alleged a sufficient cause for cancellation of the lease or a case of actionable fraud. See Simmons v. Pure Oil Company, La.App., 124 So.2d 161. On plaintiff's application, we granted certiorari.
The well-pleaded facts as set forth in the petition, as amplified by the exhibits attached thereto, are as follows: On March 31, 1949 the Commissioner of Conservation defined the Ruston Field by Order No. 164 and established rules and regulations governing the exploration for production of gas and/or condensate from the "D" Sand, which sand was declared to mean that sand productive of gas and/or condensate in the Crescent Drilling Company's Matthews No. 1 well, Section 29, T. 12 N., R. 2 W., at a depth ranging from 8,790 to 8,820 feet. This order created a number of drilling units comprising 640 acres each, generally consisting of the E½ of one section and the W½ of the adjacent section and provided that any well drilled on a unit was to be located within 330 feet from its center.
On December 16, 1953, by Order No. 164-a, the Commissioner extended the pattern of 640-acre drilling units for the "D" Sand to include, among other land, the E½ of Section 32 and the W½ of Section 33, T. 19 N., R. 3 W., and the regulations pertaining to development set forth in the original Order No. 164 were made applicable thereto. Thus, plaintiff's land, being located in the E½ of Section 32, was included in a drilling unit prior to the time he granted the mineral lease here involved.
In November of 1958, Pure, being the lessee of considerable property within the unit in which plaintiff's land was included and also of property in other units to the North and West, made application to the Commissioner of Conservation for an exceptional location for the drilling of a well (later known as the Holloway Well) requesting that it be permitted to locate said well 1270 feet south and 1470 feet west of the northeast corner of Section 32, and that the Commissioner hold a hearing on said application. In its application, Pure stated that the exceptional location was desired both because of adverse surface terrain within 330 feet of the center of said unit and because applicant's available geological information indicated a better opportunity for commercial production will be had by the drilling of a well at the proposed site. Pursuant to this request the Commissioner ordered a public hearing and issued notice to all interested parties, including plaintiff.
Approximately a week before the hearing, a representative of Pure contacted plaintiff, together with the other lessors who have filed the companion suits, and asked each to sign a letter stating that he had no objection to the drilling of a well at the exceptional location requested by the Company. Four of these lessors, including plaintiff, executed the requested letters of consent and these letters were introduced in evidence at the hearing before the Commissioner of Conservation. On the showing made at the hearing, the application for an exceptional location was granted and in his finding the Commissioner declared:
"That there may exist a barrier between production in the Ruston Field and the productive area of the present unit comprising the East Half (E½) of Section 32 and the West Half (W½) of Section 33, Township 19 North, Range 3 West, and the drilling of the well at the exceptional location will, in the event of the proof of such barrier, allow for the re-formation of drilling and production units around such well."
Thereafter, Pure drilled its well successfully completing it as a gas producer in paying quantities.
*789 On March 13, 1959 Pure applied to the Commissioner of Conservation for dissolution of some of the pre-existing units established by Order 164-A, including the unit comprising the East ½ of Section 32 and the West ½ of Section 33, and for the creation of certain new units for the "D" Sand as found in the Holloway well. The basis for this application was that the completion of the Holloway well had established a separate reservoir of the "D" Sand wholly unconnected with the "D" Sand reservoir of the Ruston Field proper. Pure's proposal, therefore, was for the creation of a new unit to share in the production from its well to be composed of the North ½ of Section 32 and the South ½ of the upper Section 29.
Pursuant to the application, the Commissioner called a hearing for April 21, 1959 at Shreveport and gave notice to all parties at interest, including plaintiff, who appeared through counsel at the hearing and objected to the dissolution of the original unit. After considering the evidence, the Commissioner issued Order No. 164-F, effective May 11, 1959, dissolving, among others, the original unit composed of the East ½ of Section 32 and the West ½ of Section 33, and creating new units in the area. Pure had requested that the new units be composed of the North ½ of certain sections and the South ½ of the sections above them. But the Commissioner's ruling established the new units by joining the North 3300 feet of a governmental section with the South 1980 feet of the governmental section adjacent thereto on the North. The new unit, which was assigned to the Holloway well, comprises the North 3300 feet of Section 32 and the South 1980 feet of upper Section 29 and embraces between 14 and 20 acres of plaintiff's 60-acre tract.
In reaching his conclusion, the Commissioner found as a fact that the Holloway well drilled by defendant had established a separate and distinct gas pool of the "D" Sand disconnected from the other "D" Sand of the Ruston Field and he described this sand as the "D" Sand of the Vienna Area.[1]
Plaintiff has not questioned, except perhaps indirectly, Order No. 164-F of the Conservation Commissioner or sought a judicial review of it. Instead, within three weeks after its issuance, he filed this suit demanding the dissolution of the lease on the ground that Pure fraudulently violated its implied obligation to use the property as a good administrator when its representative persuaded him to consent to its application for an exceptional location for a drilling site, without informing him that it intended to apply for a change in the then existing drilling units, in the event its geophysical information regarding a new gas pool was found to be correct. Plaintiff further charges that the concealment by Pure's representative of its real purpose in applying for an exceptional drilling location was part of an overall scheme devised by the company to have the drilling units reformed so that property lying to the north and west of the original unit, in which the company was interested, would be included in the new units to the detriment of plaintiff and others similarly situated.
After careful consideration of plaintiff's allegations we have come to the conclusion that the district judge and the Court of Appeal correctly resolved that plaintiff has not stated a cause of action.
The charge that defendant withheld information concerning its intention and motive to have the units changed to the detriment of plaintiff cannot sustain a cause of action for dissolution of the lease *790 in the absence of allegations of fact showing that the concealment of its purpose caused injury to plaintiff. True, plaintiff does allege that injury has resulted from defendant's act but, as will be hereinafter shown, this charge is predicated on speculative assumptions and assertions which may be said to be contrary to the findings of the Conservation Commissioner.
At the outset of our discussion of plaintiff's claims, it is apt to state that his charges of fraudulent concealment on the part of the defendant do not relate to fraud in inception, which is dealt with in Article 1847 of our Civil Code. Fraud of this sort renders the agreement null, ab initio, because of the lack of consent of one of the contracting parties. Since consent is one of the requisites necessary to the formation of a contract, the agreement is subject to nullity when fraud is present even though there be no actual damage sustained by the party seeking dissolution. See Orr v. Walker, 236 La. 740, 109 So.2d 77. The fraud here alleged is of a different nature; it pertains to the lessee's performance of the obligations expressed or implied under the lease contract and it is, in reality, employed as a base for the argument that Pure has breached the lease agreement by a maladministration of the leased premises to the disadvantage of plaintiff in violation of Article 2710 of the Civil Code. This type of fraud or misconduct does not, of itself, justify an annulment of the contract unless it is accompanied by a showing of loss or injury sustained by the party allegedly defrauded. Thus, as applied to leases, Article 2711 of the Civil Code declares, in part, that "If the lessee makes another use of the thing than that for which it was intended (which in essence is what plaintiff is here contending), and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease." (Italics and words in parenthesis ours).
Plaintiff argues that this Article is applicable and he has attempted in his petition to set forth the injury he has sustained. The substance of this claim is that, since at the time the lease was given his entire tract was situated within a drilling unit formed by the Conservation Commissioner on which the lessee was required to drill within 330 feet from the center, the latter's act in obtaining his consent to its application to change the drilling site, which is alleged to be for the purpose of benefiting other lands held by it in another unit to the north of the original Holloway unit, redounded to his detriment in that, but for the issuance of the order of exceptional location secured at the instance of defendant, it would have been bound to drill in the approximate center of the original unit and, had it done so, it would have obtained a gas well in which his entire 60 acres would have participated instead of the 14 to 20 acres, which were included in the new unit by the Conservation Commissioner.
Thus, it is seen that plaintiff's asserted claim of injury and damage is founded on his assumption that the drilling of a well in the center of the original unit would have been a successful undertaking and that the new gas pool discovered by the completion of the well at the exceptional location would likewise have been discovered if the well had been drilled at the originally designated site.
We view these contentions and allegations of damage and injury not as averments of fact but pure speculations, incapable of proof, because there is no way to show, with any degree of certainty (other than by the drilling of a well), that the "D" Sand of the Vienna Area would have been reached if the well had been located at the originally designated site. Hence, since plaintiff's right to a dissolution for breach of the lease is dependent on proof of injury and damage, he does not state a cause of action.
Actually, plaintiff's allegations are contrary to the administrative holding of the Conservation Commissioner, who has *791 found as a fact that there is a barrier or fault at or near the section line running through the center of the original unit where the well was required to be located by Order No. 164; that this barrier separates the "D" Sand of the Ruston Field proper from the "D" Sand located in the Vienna Area pool to the West and that the efficient and economical method to obtain production from the pool discovered in the Vienna Area required the formation of new drilling units. In view of this finding, it is obvious that plaintiff's alleged damage is really no damage at all because his lands are not being drained by the Holloway well except to the extent in which he is participating. The original unit was no more a production unit before the well was drilled than the new Unit "D", in which the remainder of the leased land is presently located. The same potential is there and plaintiff concedes that Pure is willing, ready and able to drill a well on the newly formed unit.
In determining whether defendant has used the leased property as a prudent administrator in compliance with Article 2710 of the Civil Code, consideration must be given not only to the specific provisions of the lease but also to the police power vested in the Commissioner of Conservation and the conservation laws of the State which are written into and form part of every mineral lease. See Le Blanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855 and Everett v. Phillips Petroleum Co., 218 La. 835, 51 So.2d 87. When plaintiff granted the mineral lease herein, he was charged with knowledge that, although the land was situated in a part of the Ruston Field which had been unitized for the drilling of gas wells by orders of the Conservation Commissioner, the unitization orders were always subject to change by the Commissioner after notice and hearing based on new discoveries or other geophysical data. Therefore, since it is presumed as a matter of law that the Commissioner acted in good faith and on the basis of the evidence before him when he authorized the exceptional drilling location on the showing made by defendant, and also when he re-established the units after finding that defendant had discovered a separate gas pool of the "D" Sand in the Ruston Field and created a new spacing unit containing all the land which would be economically drained by the Holloway well, the charge that defendant has not acted as a prudent administrator in developing the property to the mutual advantage of the parties is nothing more than the pleader's conclusion which necessarily conflicts with the established facts.
Accordingly, forasmuch as Pure has been and is developing the leased premises conformably with the orders of the Commissioner of Conservation, it appears that it has acted as a prudent administrator. And this is so, notwithstanding the allegation that the defendant, in its administration of the leased premises, sought to subjugate plaintiff's interests in favor of its own. As above stated, this charge does not serve to create a cause of actionfor, conceding for the sake of discussion, that Pure's representative owed plaintiff a duty to inform him of the geophysical data in its possession at the time it applied for the exceptional location and obtained his consent, he has sustained no operational injury as a result of defendant's alleged concealment and, therefore, is not entitled to a dissolution of the lease.
Finally, plaintiff's counsel assert that the Court of Appeal erred in not holding that the defendant was guilty of manipulating the processes of the Conservation Commissioner in that it applied to him for the issuance of orders while concealing its true purposes to obtain a change in the drilling patterns for its own advantage.
This postulation is without merit. It occurs to us that this is nothing more than a collateral attack on the findings of the Commissioner, which cannot be countenanced (see O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506) as *792 counsel is really saying that the Commissioner was imposed upon so that he acted improvidently. Yet, there is no clear allegation or claim that the findings of the Commissioner are contrary to the preponderating geophysical data as to the reality of the pool discovered by defendant in the Vienna Area.
The judgment appealed from is affirmed.
HAMLIN, J., dissents with written reasons.
HAMLIN, Justice (dissenting).
I am of the opinion that the views expressed by Judge Bolin in his dissenting opinion (124 So.2d 161, at page 167) are correct. I also feel that the allegations of plaintiff's petition are sufficient to let him have his day in court. Aneu v. Aneu, 225 La. 222, 72 So.2d 485.
I respectfully dissent.

On Application for Rehearing
PER CURIAM.
In an application for a rehearing, counsel for plaintiff assert, inter alia, that the statement in our opinion that the Conservation Commissioner found "* * * that there is a barrier or fault at or near the section line running through the center of the original unit where the well was required to be located by Order No. 164; * * *" is not supported by the allegations of the petition or the exhibits thereto attached and that, as a matter of fact, it is shown by a contour map made part of plaintiff's pleadings that the barrier is approximately one-half mile east of the original unit which was composed of the E½ of Section 32 and the W½ of Section 33.
A review of the record confirms counsel's contention that our statement as to the location of the barrier is not accurate. However, the error is not material and does not affect our conclusion that plaintiff has not stated a case of actionable fraud entitling him to a dissolution of the mineral lease.
We have carefully examined counsel's other complaints and find them to be without merit.
Accordingly, the application for a rehearing is refused.
HAWTHORNE and HAMLIN, JJ., are of the opinion that a rehearing should be granted.
NOTES
[1] In his findings the Commissioner stated:

"4. That the Vienna Area of the Ruston Field appears to be completely separated from the Ruston Field, Lincoln Parish, Louisiana, and certain units of the Ruston Field as created under Order No. 164 and amendments thereto as hereinafter described, should be dissolved as none of said units has heretofore been productive."