177 So.2d 635 (1965)
FIDELITY CREDIT COMPANY, Inc., Plaintiff-Third Party Defendant, Appellee, Appellant,
v.
J. C. BRADFORD, Jr., et al., Defendants-Third Party Plaintiffs, Appellants, Appellees.
No. 1470.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1965.
Rehearing Denied August 24, 1965.
T. C. McLure, Jr., and William M. Ford, of McLure & Ford, Alexandria, for third party plaintiffs-appellants-appellees.
*636 Gold, Hall & Skye, by William E. Skye, Alexandria, for plaintiff, third party defendants-appellees-appellants.
Polk & Foote, by William P. Polk, Alexandria, for third party defendant-exceptor.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge.
Fidelity Credit Company, Inc. sued J. C. Bradford, Jr. and his wife on a promissory note. The note was made payable to Vacu-Maid of Louisiana, and had been purchased by plaintiff.
Responding to the suit, the defendants filed a combined answer, reconventional and third party demand, by way of which they joined, along with Fidelity as parties defendant Edwin D. Ebright, d/b/a Vacu-Maid of Louisiana; Consumers Progressive Advertising Company, Inc., a Louisiana corporation; Vacu-Maid, Inc., an Oklahoma corporation; and E. R. Hensley.
In substance, defendants' incidental demands alleged that E. R. Hensley, acting as agent and representative of Fidelity and all the other parties so joined, had presented a proposal to the Bradfords under which they would purchase a vacuum cleaning apparatus to be centrally installed in their home, and, in addition, the proposal included their purchase of certain securities under which they could pay for the cleaning unit and reap additional profits by furnishing the names of other prospective purchasers. That, in consummating the agreement, Hensley fraudulently, and without their knowledge, secured from them a mortgage on their home in addition to the promissory note. That, shortly after purchase, the vacuum cleaning unit became defective in its operation and never worked properly. That, most of the prospective purchasers furnished by the Bradfords under the profit-making phase of the agreement were never contacted, thus breaching that part of the agreement. On those grounds, the Bradfords sought to have the sale, note and mortgage voided and rescinded, and, in addition, sought $200.00 damages for repairs of holes made in the walls of their home in installing the unit and attorney's fees under the "Blue Sky Law" in connection with the sale of the alleged securities. Alternatively, they sought the same relief as against the joined parties in the event judgment was awarded to Fidelity on the note.
In order to simplify the subsequent developments in the case, the following should be pointed out. Service of citation on E. R. Hensley was never obtained. Fidelity Credit Company, Inc. and the Bradfords settled their differences. The Bradfords executed a new, unsecured note to Fidelity, and each dismissed their action as to the other. Thus, Hensley and Fidelity need not be further considered for the purposes of this decision.
In response to defendants' incidental demands, Vacu-Maid, Inc., the Oklahoma corporation, filed an exception to the jurisdiction ratione personae. That exception was sustained by the lower court, and the Bradfords have appealed from that ruling.
Edwin D. Ebright filed certain exceptions to the incidental demands which were overruled by the lower court. Mr. Ebright has made no contentions regarding the exceptions on this appeal, and they need not be further discussed for the purposes of this decision.
Mr. Ebright also answered the Bradfords' incidental demands, denying all material allegations thereof.
Consumers Progressive Advertising Company did not answer the incidental demands, and the case was taken up against it as on confirmation of default.
Upon trial in the lower court, judgment was awarded to the Bradfords rescinding the sale, voiding the note sued upon and *637 ordering the mortgage cancelled. The lower court further gave judgment against Edwin D. Ebright for the principal sum of $708.90, the amount of the new note given to Fidelity by the Bradfords, and ordering Ebright to remove the vacum cleaning system from the Bradford home at his expense. The demand as against Consumers was dismissed.
Edwin D. Ebright has brought this appeal from that judgment.
The Bradfords have answered the appeal, seeking an increase in the basic award from $708.90 to $921.96, the amount of the original note sued upon, plus attorney's fees.
The Bradfords' appeal from the lower court judgment sustaining the exception to the jurisdiction by Vacu-Maid, Inc., is also before us.
We will first take up the question of the exception to the jurisdiction by Vacu-Maid, Inc., sustained below.
The following are the pertinent facts involved. Vacu-Maid, Inc. is an Oklahoma corporation, and has never qualified or been authorized to do business in Louisiana. It employs no personnel in Louisiana, has no salesmen or office here, and sends no representatives into this State for any purpose. Ebright (and Consumers, on occasion) ordered the units direct from the factory in Oklahoma, paying for them as received. Vacu-Maid, Inc. exercised no control over subsequent sales of the units in Louisiana, including the price paid by individual purchasers. The relationship was essentially that of seller and buyer, shipment to Louisiana being made by common carrier. In essence, Ebright simply resold the units to other individuals after having purchased them from Vacu-Maid, Inc.
Third party plaintiffs have cited a number of authorities in support of their contention that Vacu-Maid, Inc. was engaged in sufficient business activity in this State to bring it under our jurisdiction.
Statute-wise, they have cited LSA-R.S. 13:3201, a 1964 act quite broad in its literal wording. However, both that statute and LSA-R.S. 13:3471(1), as last amended in 1960, state, in their explanatory comments, that they are designed so as to allow exercise of the full potential of jurisdiction over foreign corporations as developed by recent United States Supreme Court decisions, which will be discussed below. Additionally, comment (d) of LSA-R.S. 13:3201 states that the term "transacting business" as therein used, is intended to be as broad as the phrase "engaged in a business activity" as used in LSA-R.S. 13:-3471(1). It is to be noted, we think, that the comment says "as broad as" and not "broader than".
We turn next, then, to the jurisprudence cited by third party plaintiffs.
The cases are as follows: International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Babineaux v. Southeastern Drilling Corporation, (La.App., 3 Cir., 1965), 170 So.2d 518; Covington v. Southern Specialty Sales Company, (La.App., 1 Cir., 1963), 158 So.2d 79; McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Sonnier v. Time, Inc., 172 F.Supp. 576 (1959); and, Nigro v. Cessna Aircraft Company, (La.App., 4 Cir., 1964), 169 So.2d 594.
We have examined each of those cases carefully, and after so doing, feel that they are all distinguishable on their facts from the instant case.
In the International Shoe case, supra, the corporation employed from eleven to thirteen salesmen, who were under the direct supervision of the corporation's sales manager; it rented display rooms in the state; it paid the salesmen commissions of approximately $134,000.00 over a four-year period, all within the state.
In the Babineaux case, supra, the corporation advertised for employees in Louisiana *638 newspapers; it conducted interviews in Louisiana; it had prospective employees examined by Louisiana physicians; it began paying accepted applicants while they were still in Louisiana, though their work was to be ultimately performed elsewhere.
In the Covington case, supra, the corporation sent sales representatives of its own into Louisiana every four or five weeks to solicit sales and to contact distributors, one hundred forty sales and service centers and other outlets for the purpose of furnishing technical aid and other assistance.
In the McGee case, supra, jurisdiction of a California court over a Texas insurance company was upheld where the policy was delivered in California, premiums were paid by mail from California and the insured resided and died in California, but, the holding was applied under a special California statute subjecting foreign corporations to suit on insurance contracts entered into with residents of California even though such corporations could not be served with process within California.
In the Sonnier case, supra, the corporation, among other things, had twelve representatives in Louisiana working directly for it in soliciting subscriptions.
In the Nigro case, supra, in addition to having a Louisiana distributor and making extensive sales, the corporation engaged in the collecting of accounts receivable and bore part of the expense of merchandising.
Each case must be decided upon its own facts. Considering the facts of the instant case, as applied to the facts of, and rules laid down by, the authorities discussed above, we are of the opinion that the lower court properly sustained the exception to the jurisdiction herein. Buckley v. New York Times Company, 338 F.2d 470 (5 Cir., 1964).
With that question disposed of, this decision now reduces itself to the equities between the third party plaintiffs, Edwin D. Ebright and Consumers Progressive Advertising Company.
The contentions of third party plaintiffs have already been set forth herein. Consumers makes no contentions, since it never answered the incidental demands, and it appears from the record that Consumers is a defunct, non-operating corporation with its officers gone from this State, Ebright contends, in substance, that he had no direct relationship with third party plaintiffs and other purchasers like them, but rather, that the responsibility, if any, should lie with Consumers and Hensley.
We should, at this point, set forth the pertinent and rather involved details surrounding the sale to the Bradfords. Hensley was employed by Consumers Progressive Advertising Company as a salesman, and it was he who made the actual sale. The sales "pitch" consisted of a discussion of about two hours concerning the way purchasers could make large profits by referring the names of other prospective purchasers, with only the last ten or fifteen minutes concerning the vacuum cleaning unit as such. Where the Bradfords were concerned, it appears quite certain from their testimony that they were induced by Hensley to sign a mortgage on their home, without their knowledge, as security for the note and the purchase price of the unit. Additionally, Mr. Ebright testified that, at one time, there was a flurry of complaints from various purchasers about having signed mortgages without realizing it.
The salesman, Hensley, also issued to the Bradfords certain "supplemental commission agreements" under which they were to receive payments from Consumers Progressive Advertising Company for furnishing names of other prospects. It is these instruments that third party plaintiffs allege are securities under our Blue Sky Law.
Behind the scenes, Ebright, who had previously done business with Fidelity, had arranged for Consumers to be financed *639 through Fidelity. Ebright, as distributor, sold the units to Consumers, as dealer, or, in some cases, the units were apparently shipped direct to Consumers, with Ebright receiving a credit or cash from the Vacu-Maid, Inc. factory in Oklahoma for the difference between the distributor and dealer prices. Consumers, with Hensley as salesman, sold to the individual purchasers. Purportedly to expedite and solidify the financing and purchase of the paper by Fidelity, the sale contracts, including notes and mortgages, were, for a period of some months, and in the Bradford transaction, taken by Hensley in the name of Ebright, d/b/a Vacu-Maid of Louisiana. Ebright would then endorse the notes over to Fidelity. Fidelity paid Consumers the basic sale price, less interest, or, in some cases, actually paid Ebright, who, in turn, deposited Fidelity's check to the credit of Consumers. Finally, Consumers paid Ebright an "override" of $25.00 on each sale made.
It does not appear that Ebright had any direct contact with individual purchasers or any actual control over the methods used by Hensley for Consumers. Whether, at the time of the sale to the Bradfords, he had any knowledge of the methods used, is a question not concretely answered by the record.
Ebright, however, by allowing the notes and mortgages to be executed in his name as seller-mortgagee, clothed Hensley with the apparent authority to act as agent for him as the apparent principal. It is settled law, without the necessity of citation of authorities, that, while Ebright may have been innocent of any actual fraud, he is nevertheless liable to third parties with whom the agent deals in his name.
The written opinion of the lower court directs, inter alia, the rescission of the sale and that the original note and the mortgage executed with it be rendered null and void. The lower court did not rule on third party plaintiffs' contention that the sale should, among other reasons, be rescinded for redhibitory vices in the vacuum cleaning unit, but rather, based its decision on the presence of fraud. The record is without sufficient evidence to support a rescission of the sale on the basis of the alleged defects, the only evidence in that regard being the testimony of third party plaintiffs, which is somewhat inconclusive as to the actual extent and nature of the defects.
If the lower court judgment is to be upheld, it must, then, be done on the finding of fraud. Article 1847, LSA-C.C., treats of the nullity resulting from fraud, and states, inter alia, that fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, and that the artifice must be designed to obtain either an unjust advantage to the party for whose benefit it is carried on, or a loss or inconvenience to him against whom it is practiced. Article 1847 deals with fraud in the inception of a contract which renders the agreement null, ab initio, because of the lack of consent of one of the contracting parties. Simmons v. Pure Oil Company, 241 La. 592, 129 So.2d 786 (1961). Additionally, a person may have his contract annulled when it has been obtained through the practice of artifice by another designed to cause him inconvenience, and the sustaining of pecuniary loss is not essential. Orr v. Walker, 236 La. 740, 109 So.2d 77 (1959) and on remand, (La.App., 2 Cir., 1959), 113 So.2d 485. Finally, in the instant case, the testimony leaves no doubt that third party plaintiffs had no intention of mortgaging their home, and would not have entered into the contract knowing of the mortgage. That fact and the cited jurisprudence, coupled with Mr. Ebright's testimony regarding the "flurry" of other similar complaints of mortgages unknowingly executed, amply supports the finding of fraud by the lower court.
With regard to third party plaintiffs' demand for attorney's fees, based on *640 the allegation that the issuance of the "supplemental commission agreements" amounted to a sale of securities under LSA-R.S. 51:701, we agree with the lower court that those documents were not securities as contemplated by the statute. In our view, they were simply advertising gimmicks in the form of coupons, and the fact that they were similar in appearance to a stock certificate or the like does not, of itself, make them securities.
Likewise, the lower court's holding that third party plaintiffs' demand for $200.00 damages for repairs had not been proved and could not, therefore, be awarded, should stand undisturbed. While third party plaintiffs testified that repairs would be necessary, no evidence as to cost was presented.
The amount of the money judgment should also stand undisturbed. It appears from the record that third party plaintiffs themselves never made any payments on the original note, and that the new note given to Fidelity in the sum of $708.90 represents their actual monetary loss.
Accordingly, the judgment of the lower court is affirmed, with all costs of this appeal assessed against Edwin D. Ebright, except such costs as have been incurred in connection with third party plaintiffs' appeal from the lower court judgment sustaining the exception to the jurisdiction of Vacu-Maid, Inc., which said costs are assessed against third party plaintiffs, J. C. Bradford, Jr., et ux.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted, limited to the question of whether third party defendant, Edwin D. Ebright is liable to third party plaintiffs.
CULPEPPER, J., recused.