# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2011

No. 10-31074

Lyle W. Cayce
Clerk

ANDREW T. WALKER; ALISON W. MEDINIS; CARYN W. DONNELLY;
CLAIRE W. KETTELKAMP; JAMES TIGNER WALKER; BARBARA RIGBY
WALKER,

Plaintiffs - Appellants

v.

CHESAPEAKE LOUISIANA, L.P.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CV-1727

Before SMITH, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Six lessors of mineral rights brought suit to cancel the oil and gas leases they had executed, alleging the lessee breached key provisions. The district court granted summary judgment in favor of the lessee. We AFFIRM.

In 2008, Andrew Walker, Alison Walker Medinis, Caryn Walker Donnelly, Claire Walker Kettelkamp, James Walker, and Barbara Walker ("the Walkers"),

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

as lessors, and Chesapeake Louisiana, L.P. as lessee, entered into six mineral leases covering six tracts of property owned by the Walkers in Caddo Parish, Louisiana. Each contained the same specially-negotiated terms that are central to this dispute: the "No Surface Operations" provision, the "Well Information" provision, and the "Geophysical Information" provision.

In 2009, the Walkers filed suit against Chesapeake in Louisiana state court, alleging Chesapeake violated the No Surface Operations and Geophysical Information provisions. The only relief requested was lease cancellation. The suit was removed to the United States District Court for the Western District of Louisiana. The Walkers then amended their complaint to add a claim that the Well Information provision had also been breached.

Chesapeake moved for summary judgment, contending that it had substantially performed under the leases. Chesapeake pled in the alternative that any breach should not cause dissolution of the leases. Instead, it urged the district court to apply the Louisiana doctrine of "judicial control."

On September 24, 2010, the district court granted summary judgment and dismissed the Walkers' claims. The court declined to rule on substantial performance, finding genuine issues of material fact on that issue. The court held, though, that even accepting as true the allegations that Chesapeake had breached the three provisions, Chesapeake still was entitled to summary judgment. The court applied judicial control. Under that power, a court may decline to order termination of a contract such as a lease, despite breaches of its terms, and instead may order a lesser remedy. Because the Walkers sought no other relief, judgment was entered for Chesapeake. A timely appeal followed.

## DISCUSSION

A summary judgment is reviewed *de novo*, applying the same standard as did the district court under Federal Rule of Civil Procedure 56. *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191 (5th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Louisiana law controls in this diversity action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The district court found a dispute of fact existed, but judgment was entered because of a Louisiana discretionary doctrine called "judicial control." As we will explain, the state-law doctrine is one for the judge alone to apply. The doctrine was applied on summary judgment based on what the district judge determined to be the facts most favorable to the non-moving party that could be found by a jury. The application of the discretionary doctrine will be reviewed for an abuse of discretion. *E.g.*, *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008); *see also Carriere v. Bank of La.*, 702 So. 2d 648, 654-55 (La. 1996) (citing *Ergon, Inc. v. Allen*, 593 So. 2d 438, 440 (La. Ct. App. 1992)).

In addition to challenging the exercise of discretion under the judicial control doctrine, the Walkers also urge us to apply a Louisiana Civil Code section that they interpret to require lease cancellation whenever the lessee commits a breach. "When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract . . . ." La. Civ. Code art. 2013. If article 2013 created an automatic right of cancellation, then the judicial control cases we will later discuss would appear wrongly decided. Instead, the Civil Code is better read as simply creating a right to seek dissolution in court. The official comments to article 2013 provide that "dissolution takes place upon judicial declaration." *Id.* at cmt. (c). Seeking that judicial declaration is what this case is about. Our sole issue is thus whether the district court abused its discretion by refusing to declare a dissolution.

Louisiana jurisprudence does not favor lease cancellation. *See, e.g.*, *Carriere*, 702 So. 2d at 654. The doctrine of judicial control is a tool used to block the remedy of lease cancellation under certain circumstances. *See Brewer v. Forest Gravel Co.*, 135 So. 372, 373 (La. 1931) (citing *Sieward v. Denechaud*, 45

So. 561, 564 (La. 1908)). When this court seeks to understand state law, of primary importance are the decisions of that state's highest court. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). The Louisiana Supreme Court has referred to the doctrine only in general terms. For example, it has stated in several opinions that a party's "right to dissolve a lease is subject to judicial control according to the circumstances." *Sieward*, 45 So. at 564; *Rudnick v. Union Producing Co.*, 25 So. 2d 906, 908 (La. 1946).

Somewhat akin to a statement by the highest court itself, the state supreme court once affirmed an intermediate court's decision in which a more detailed articulation had appeared: judicial control requires that a lessee's "dereliction of duty must be of a substantial nature and cause injury to the lessor." *Simmons v. Pure Oil Co.*, 124 So. 2d 161, 166 (La. Ct. App. 1960), *aff'd*, 129 So. 2d 786 (La. 1961).

In some recent Louisiana intermediate appellate court opinions, "good faith" of the breaching party has been mentioned as well. "Judicial control is an equitable doctrine by which the courts will deny cancellation of the lease when the lessee's breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact." *W. Sizzlin Corp. v. Greenway*, 821 So. 2d 594, 601 (La. Ct. App. 2002) (citation omitted). The Walkers seize on this language to argue there is at least a fact question as to Chesapeake's good faith, which should have prevented application of judicial control at this stage. Chesapeake argues that good faith is only a minor consideration, and instead judicial control should be exercised to prevent cancellation when the breach and the resulting injury are substantial. The district court included in its opinion the *Western Sizzlin* language that we quoted above, but it never addressed whether the good faith of the lessee was relevant to judicial control.

We conclude that the best understanding of the judicial control doctrine is that judicial control depends on the "circumstances." *See Sieward*, 45 So. at 564. We also accept that the Louisiana Supreme Court, which did not comment

on the intermediate court's explanation in *Simmons v. Pure Oil* when it affirmed, accepted that the dereliction must be substantial and harm must result. *Simmons*, 124 So. 2d at 166-67.

We do not consider good faith an independent factor because of the facts of *Simmons*. The claimed dereliction there was a misrepresentation by the lessee regarding its future plans when it asked the lessor to support its petition to allow the drilling of a well in a certain location. *Id.* at 163-64. Even so, the lease was not cancelled because the lessee's conduct was not "accompanied by a showing of loss or injury sustained by the party allegedly defrauded." *Simmons*, 129 So. 2d at 790. There was a dissent both at the intermediate court and the supreme court. *Id.* at 792 (Hamlin, J., dissenting); *Simmons*, 124 So. 2d at 167 (Bolin, J., dissenting). The dissenters argued that the issue of lease cancellation should be left open for trial because of the lessee's alleged dishonesty. *See, e.g., Simmons*, 124 So. 2d at 167-68 (Bolin, J., dissenting); *Simmons*, 129 So. 2d at 792 (Hamlin, J., dissenting).

We need not conclude that the misrepresentation in *Simmons* is of the same nature as the alleged bad faith in the present case to hold that judicial control does not demand that the breach be a completely unintentional act.

Another Louisiana precedent has factual similarities to the present case. The state supreme court exercised its discretion not to dissolve a lease because "there were grounds for honest doubt as to the rights of the parties" under the lease. *Rudnick*, 25 So. 2d at 908. "This Court has not, and will not, penalize a litigant lessee by dissolving a lease held technically in default when there is a bona fide defense." *Id.*; *see also Midstates Oil Corp. v. Waller*, 207 F.2d 127, 131 (5th Cir. 1953). The exercise of discretion not to cancel a lease and to grant summary judgment is justified when the lessee's breach was not substantial. *Iberian Oil Corp. v. Tex. Crude Oil Co.*, 328 F.2d 832, 833 (5th Cir. 1964).

We now examine the claims about Chesapeake's derelictions in light of these principles.

First, one provision states that "no surface operations may be conducted upon the leased premises without . . . consent of Lessor." (emphasis omitted). The Walkers allege Chesapeake violated this provision by crossing the leased premises using all-terrain vehicles and by "soft staking" a future well location, both without consent. The Walkers concede the actions caused no physical damage to the leased premises. Accordingly, even assuming there was a breach of this provision, the district court did not abuse its discretion by finding there was no genuine dispute of material fact on whether the breach was so substantial or injurious to plaintiffs as to justify lease cancellation.

Second, another provision provides that, subject to a mutually agreed-upon data license agreement, Chesapeake must furnish plaintiffs certain information regarding various "wells located on the leased premises," such as written notice of the date and time any well is commenced, daily drilling reports, and copies of fluid analyses. Chesapeake allegedly violated this provision by failing to provide the Walkers with any information regarding a particular well on the leased premises. The summary-judgment evidence shows that, although the parties had not yet negotiated a data license agreement as required by the leases, Chesapeake contacted plaintiffs one day after being notified of the claimed breach in an attempt to negotiate such agreement and provide plaintiffs with the requested information. Even assuming Chesapeake breached this provision, the district court did not abuse its discretion by finding no genuine dispute of material fact on whether the breach was so substantial or injurious as to warrant lease cancellation.

Last, the lease provides that when "Lessee acquires seismic permits on lands within one mile of the Leased Premises, Lessee agrees to negotiate in good faith to include both the Leased Premises and surrounding acreage so as to adequately provide fully imaged 3-D seismic coverage of the Leased Premises." The Walkers maintain this provision was breached when Chesapeake "acquired seismic permits on lands within one mile of the Leased Premises, but . . . refused

to negotiate in good faith with plaintiffs and surrounding mineral owners concerning inclusion of the Leased Premises and surrounding acreage and/or to provide fully imaged 3-D seismic coverage of the Leased Premises . . . ."

The district court described the Walkers' interpretation as being that if Chesapeake acquired a single seismic permit for property within one mile of any part of the leased premises, as opposed to conducting actual geophysical testing, then Chesapeake had to negotiate to include the leased premises in geophysical testing conducted within one mile of the leased premises. The district court described Chesapeake's contrary interpretation to be that if it conducted geophysical testing on property within one mile of the leased premises, then Chesapeake had to negotiate to include the leased premises in the testing and provide the Walkers with the resulting data.

The district court did not abuse its discretion by ruling that the various interpretations of the provision provided an "honest doubt" as to the parties' rights under the leases. *See Rudnick*, 25 So. 2d at 908.

There was no genuine dispute of material fact on whether plaintiffs were clearly entitled to the remedy of lease dissolution.

AFFIRMED.