PONDER, Justice.
 

 In this suit the plaintiff is seek'ng to have Section 1, para. E-2, of Order No. 137-C and Order No. 137-C-6 of the Commissioner of Conservation declared null and void and to enjoin the Commissioner from enforcing same on the ground that these orders are beyond the authority of the Commissioner and in the alternative that they are violative of the State and Federal Constitutions. The lower court rejected the plaintiff’s demand and dismissed its suit and the plaintiff has appealed.
 

 The record shows that the Commissioner of Conservation, hereinafter referred to as the Commissioner, after hearing, issued Order No. 137-C on January 9, 1953 establishing thirteen units containing 640 acres each, to govern the production of gas and condensate from the McFearin Sand in the Hico-Knowles Field in Lincoln Parish. It was provided under Paragraph E-2 of this order that:
 

 “If, in the opinion of the Commissioner of Conservation, it shall appear that only a fraction of any delineated unit is included within the productive limits of the pool, the productive acreage in such unit may, by order of the Commissioner of Conservation after public hearing, be added to any adjacent unit or units, provided that by such an allocation no well shall have its allowable increased by more than twenty-five (25%) percent.”
 

 Included in these thirteen units were three units known as the Davis Unit, the Hedgepeth Unit, and the Lomax Unit. The Lion Oil Company drilled wells on both the Hedgepeth Unit and the Davis Unit which are still producing. This company also drilled a well on the Lomax Unit which was not capable of producing. The Lion Company merged into Monsanto Chemical Company in 1955, the plaintiff
 
 *1063
 
 herein, and shortly thereafter released all of its leases covering the Lomax Unit. On July 18, 1956, the Commissioner, after public hearing, issued Order No. 137-C-6 after .a finding of fact that the geological and engineering data indicated that approximately 281.78 acres of the Lomax Unit, lying South of the Davis Unit and West of the Hedgepeth Unit, are probably underlain by productive portions of the McFearin Sand and based on this finding ordered 133.91 acres to be added to the Hedgepeth Unit and 147.87 acres to be added to the Davis Unit and at the same time increased the allowable accordingly. In this order it was provided that Order No. 137— C, except as amended, was to remain in full force and effect.
 

 As assignment of error in regard to the holding of the lower court, appellant states in his brief filed in this Court, that: “The Court erred in holding that the Commissioner of Conservation after having issued Order No. 137-C, which fixed thirteen units of 640 acres each, could amend this order by issuing Order No. 137-C-6, which added 147.87 acres to one unit making a unit of 787.87 acres, and added 133.91 acres to another unit making a unit of 773.91 acres, and leaving the other units at 640 acres each, particularly where there was no finding of fact by the Commissioner-in Order No. 137-C-6 with reference to the maximum area that could be efficiently and economically drained by one well.”
 

 It is the contention of the appellant that the Commissioner, having once found that a well would economically and efficiently drain 640 acres and accordingly issued Order No. 137-C, establishing units containing 640 acres each, could not thereafter change or amend this order so as to increase the acreage in the Hedgepeth or the Davis Units, and, if so, it could only be accomplished by rearranging all thirteen units to take care of the added acreage so as to establish units of approximately equal acreage.
 

 It appears from the record that the Commissioner found as a fact that the wells on the Hedgepeth Unit and the Davis Unit would efficiently and economically drain the acreage added to these units. It is stated in the Oi-der of the Commissioner mai-ked No. 137-C-6:
 

 “That a reasonable interpretation of all available geological and engineering data indicate that approximately 281.-78 acres in Section 28, 29, and 33, lying South of the Lion Davis Unit and West of the Lion Hedgepeth Unit, are probably underlain by productive portions of the McFearin Sand and should be added to the Lion (Monsanto) Davis Unit, * * * and/or the Lion (Monsanto) Hedgepeth Unit, * * * Hico-Knowles Field, Lincoln Parish, Louisiana.”
 

 Furthermore, provision was made in the first order, No. 137-C as pointed out
 
 *1065
 
 above, for the addition of acreage if the facts so warranted it.
 

 LSA-R.S. 30:6, subd. B provides that whenever any application shall be be made to the Commissioner of Conservation for creation, revision or modification of any unit or units for production of oil or gas, for the adoption of any plan for spacing of wells, that thirty days notice shall be given of the hearing to be held thereon. Under the provisions of LSA-R.S. 30:4, subd. C the Commissioner has authority to: “ * * * make after notice and hearing as provided in this Chapter, any reasonable rules, regulations, and orders that are necessary from time to time in the proper administration and enforcement of this Chapter, including rules, regulations, or orders for the following purposes: * * * (3) To prevent wells from being drilled, operated, and produced in a manner to cause injury to neighboring leases or property * * * (13) To regulate the spacing of wells and to establish drilling units, including temporary or tentative spacing rules and drilling units in new fields.”
 

 In the case of Alston v. Southern Production Co., Inc., 207 La. 370, 21 So.2d 383, 386, wherein the court approved an order of the Commissioner increasing the size of drilling units from 320 acres to 640 acres, this Court said:
 

 ''The only restriction on the authority of the Commissioner to establish drilling units is that such an order must be reasonable and the unit prescribed must not exceed the maximum area which one well can efficiently and economically drain. In the absence of a showing to the contrary, we must assume that the Commissioner’s finding in this instance, which was preceded by the notice of hearing required by the statute, determined correctly that one well could efficiently and economically drain 640 acres.”
 

 The appellant contends that although the wells may now economically and efficiently drain the area, they will not do so in the future and, therefore, the order of the Commissioner amounts to a taking of its property and giving it to ethers in violation of the due process clause of the Fourteenth Amendment to the Federal Constitution and Section 2 of Article I of the Louisiana Constitution, LSA.
 

 Under the provisions of Section 9 of Title 30, the landowners of each tract are to have the opportunity to recover their just and equitable share of the production in the pool without unnecessary expense of drilling. Herein the owners of the added acreage would have no opportunity to recover their just and equitable share unless an additional well was drilled on the Lomax Unit and under the facts this would not be economically feasible.
 

 
 *1067
 
 As long as the Commissioner acts reasonably, in accordance with law and the proven facts, his actions are not violative of the due process clause. Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495 and the authorities cited therein.
 

 It appears from the evidence that these wells are presently draining the products from under this added area and that the allowables have been proportionately increased. It further appears that the Davis Unit is producing its allowable and that the Hedgepeth Unit is producing a little short of its allowable. According to appellant’s own witnesses, the Davis and Hedgepeth wells were draining the acreage that was added to these units.
 

 We cannot anticipate what the future production might be. If it should appear in the future that these wells could not efficiently and economically drain these areas, the Commissioner could change the order, after a hearing, to conform to the proven facts.
 

 The appellant contends that the order adding the acreage to these two units is arbitrary and unreasonable. The Commissioner executed this order after a public hearing was had and the facts found from such hearing to the effect that the geological and engineering data warranted such a change and that this was the maximum area that could be economically and efficiently drained by one well as provided for in LSA-R.S. 30:9, subd. B. Under such circumstances and from the evidence contained in the record of this case, we cannot say that the Commissioner acted arbitrarily in executing the order. This Court will not substitute its discretion or judgment for that of the Commissioner in the absence of evidence showing such action to be arbitrary. Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495; O’Meara v. Union Oil Company of California, 212: La. 745, 33 So.2d 506.
 

 For the reasons assigned, the judgment of the lower court is affirmed at appellant’s cost.