378 So.2d 485 (1979)
Vince DUNN, Sr.
v.
R. T. SUTTON, Commissioner of Conservation, Department of Conservation of the State of Louisiana.
No. 12883.
Court of Appeal of Louisiana, First Circuit.
November 12, 1979.
Rehearing Denied December 27, 1979.
*486 Vince Dunn, Jr., Baton Rouge, of counsel for plaintiff-appellant, Vince Dunn, Sr.
Veil D. Devillier, Eunice, Lawrence E. Donohoe, Jr., Lafayette, of counsel for defendant-appellee, R. T. Sutton, etc.
Before EDWARDS, LEAR and SARTAIN, JJ.
EDWARDS, Judge.
Plaintiff-appellant, Vince Dunn, Sr., appeals a trial court judgment affirming Order 1047 of the Office of Conservation, State of Louisiana, and dismissing plaintiff's suit at his cost. We affirm.

I. PROCEEDINGS
On October 10, 1978, South Louisiana Production Company, Inc., (SLAPCO), requested a public hearing to review evidence concerning the 17,600 foot Tuscaloosa Sand, Reservoir A, in the Irene Field, East Baton Rouge Parish. SLAPCO had already completed one well in that area, designated as the Kizer No. 1 Well. The requested hearing was to create a pattern of drilling and production units in Reservoir A of the 17,600 foot Tuscaloosa Sand.
On November 21, 1978, at Baton Rouge, Louisiana, under Docket No. 78-703, a hearing was held before R. T. Sutton, the Commissioner of Conservation, State of Louisiana, the defendant-appellee in this suit. SLAPCO and many other interested parties were present and presented evidence in support of various unitization plans. Plaintiff, represented by an attorney and a consulting geologist, presented his own plan. The issue of which plan would be selected by the Commission was hotly contested.
After considering all the evidence, the Commissioner of Conservation issued Order 1047 on December 5, 1978, effective as of November 21, 1978. The Order established twenty drilling units of 640 acres each. The Kizer No. 1 Well was located near the western boundary of Sub Unit A, as shown in Diagram 1. Plaintiff's land was a one acre by twenty acre strip running north-south just to the east of the SU ASU K boundary.
*487 
IRENE FIELDEAST BATON ROUGE

17,600' TUSCALOOSA SANDRESERVOIR

A

Diagram 1
The Commissioner found from all the evidence that each unit could be efficiently and economically drained by one well and that the creation of 640 acre units should reasonably assure each separate tract included an opportunity to recover its just and equitable share of the contents of the reservoir.
Kizer No. 1 was designated as the unit well for SU A and SLAPCO was named operator for SU A through SU L. Commissioner Sutton ruled that future wells in Reservoir A should be no closer than 660 feet to any unit boundary and no closer than 2,000 feet to any other well drilling into the said reservoir at 17,600 feet.
Relying on LSA-R.S. 30:12, plaintiff filed suit against the Commissioner of Conservation on January 2, 1979, seeking injunctive relief, a judgment that plaintiff's lands be included in SU A, (the unit in which Kizer No. 1 Well was already operative), or any other relief the court deemed proper.
Plaintiff alleged that the exclusion of his acreage from SU A was "arbitrary and capricious, unreasonable, illegal, discriminatory, gerrymanding (sic), unconstitutional, and a confiscation of petitioner's minerals."
Through counsel, Commissioner Sutton answered plaintiff's petition, asking that it be dismissed.
At trial, plaintiff-appellant, Vince Dunn, Sr., was not present. His son and attorney, Vince Dunn, Jr., was sworn in as plaintiff's sole witness. The thrust of his testimony was that the Commissioner of Conservation should have extended the eastern border of SU A one more acre to a geographic section line and then turned north. This would have had the effect of including plaintiff's lands in SU A. Turning north without including plaintiff's property was a decision *488 "arbitrarily and capriciously" made, according to Mr. Dunn.
Dunn's explanation for the decision actually made by the Commissioner was basically that of racial discrimination. Transcript selections highlight plaintiff's contention:
"it is my understanding and after researching and looking into the situation, that whenever you have minority property owners for some strange reason to me they have always (been) systematically excluded." T-63
"I feel that this was a classic case of discrimination as far as the property owners that I have heard about in other states, for instance, like Mississippi." T-74
"if they were white then I would say that probably the action taken wouldn't have been taken." T-77
Mr. Dunn presented no evidence showing prior use of section lines as a basis for unitization orders. He also presented no evidence showing any pattern of racial discrimination. Plaintiff's whole case was the testimony of Vince Dunn, Jr.
On February 21, 1979, the trial court set aside the rule for a preliminary injunction, affirmed Order 1047, and dismissed plaintiff's suit.
Plaintiff-appellant has appealed this judgment. For two reasons, we affirm.

II. REASONS FOR JUDGMENT
The trial court's judgment upholding Order 1047 and dismissing Dunn's suit was correct because A) plaintiff-appellant failed to shoulder his burden of proof, and B) the facts show the Commissioner of Conservation made a carefully considered, valid choice.

A.
LSA-R.S. 30:12 permits any person adversely affected by any order of the Commissioner of Conservation to obtain court review. The statute provides that:
"The burden of proof shall be upon the plaintiff and all pertinent evidence with respect to the validity and reasonableness of the order of the commissioner complained of shall be admissible. The law, the provision of this Chapter, or the rule, regulation, or order complained of, shall be taken as prima facie valid."
The jurisprudence highlights both the powers granted the Commissioner of Conservation and the presumption of validity enjoyed by his orders.
Hunter v. McHugh, 202 La. 97, 11 So.2d 495 (1942), held that giving the Commissioner of Conservation his powers was not an unlawful delegation of legislative power.
O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506 (1947), emphasized the Commissioner's power to find the facts to which the law regarding the production and conservation of oil and gas were to be applied.
Citing Hunter and O'Meara, the court in Mobil Oil Corporation v. Gill, 194 So.2d 351 (La.App. 1st Cir. 1966), writs denied 250 La. 174, 194 So.2d 738 (1967), stated that while:
"The courts are, therefore, obligated to give a full review to the facts of the particular case. ... it is also the law of this state that the courts will not substitute their discretion or judgment for that of the Commissioner in the absence of evidence showing such action to be arbitrary." 194 So.2d at 354.
The presumption "as a matter of law that the Commissioner acted in good faith and on the basis of the evidence before him" was reaffirmed in Simmons v. Pure Oil Company, 241 La. 592, 129 So.2d 786 (1961).
In the present case, Dunn, the plaintiff-appellant, failed to even appear at trial. Vince Dunn, Jr. appeared and testified in his father's stead. The testimony consisted of broad generalizations with no buttressing facts, unsupported conclusions of law, and repeated accusations of racism. The allegations of racism were reemphasized on oral argument in this court.
We most emphatically note that not one shred of racial discrimination has been proven by plaintiff-appellant. Far from proof, there is no evidence at all of racism, *489 save for the plaintiff's bare allegations, testimony and oral argument. We absolutely reject plaintiff-appellant's claim that the Commissioner of Conservation was racially prejudiced.
Plaintiff's lack of evidence mandates a finding that Vince Dunn, Sr., the plaintiff-appellant, has failed to carry his burden of showing Order 1047 to be arbitrary and capricious. Therefore, it must be upheld.

B.
While plaintiff-appellant's failure to carry his burden of proof is, taken alone, sufficient to uphold Order 1047, due to the accusations of racism, we feel it incumbent that the Commissioner's Order be justified. A few observations of fact suffice:
1. At the time of the November 21, 1978, hearing, only the Kizer No. 1 Well had been drilled and the reservoir limits were unknown.
2. Due to the lengthy drilling time required to reach the 17,600 foot level and the shortage of proper equipment, together with the number of wells needed to delineate the reservoir limits, evidence showed that square units of 640 acres were required to prevent waste or the drilling of unnecessary wells. Thus, the plaintiff-appellant's alternative suggestion of 12 units of approximately 1067 acres each was rejected.
3. Due to the absence of regular 640 acre governmental sections in the Irene Field and the fact that few property lines ran due north and south, adopting plaintiff's plan of following said lines would have resulted in either irregularly shaped units or units varying in size from the 640 acre pattern.
4. To have moved the SU A borders eastward would have required either the deletion from SU A of tracts closer to the Kizer No. 1 Well than were plaintiff's lands or the creation of a unit varying from 640 acres.
5. The unit pattern was fixed by taking the Kizer land, then the only known productive tract, and encompassing all those lands within a unit. Beginning at one corner of the Kizer tract, the unit lines run one mile due east, one mile due north, then west and south to form a mile square unit. All other units were then fixed based on SU A.
6. Had Order 1047 placed the Kizer No. 1 Well centrally in SU A, plaintiff's lands would have been even farther to the east and farther from SU A.
7. Subsequent to Order 1047, a well was begun in SU B, which unit included lands owned by blacks.
Essentially, plaintiff-appellant is concerned simply because his land does not fall within SU A, where the Kizer No. 1 Well produces some 10,000,000 cubic feet of gas and 228 barrels of condensate per day. Plaintiff only differs from landowners of the other 12,160 acres unitized by Order 1047 but not included in SU A in that plaintiff's lands are immediately adjacent to SU A.
While plaintiff undoubtedly feels ill treated, this case differs little in principle from others in which orders of the Commissioner have been upheld despite individual protestations of unfairness and claims of takings. See Monsanto Chemical Company v. Hussey, 234 La. 1058, 102 So.2d 455 (1958); Miller v. Menefee, 228 So.2d 689 (La.App. 1st Cir. 1969), writs denied 255 La. 286, 230 So.2d 589 (1970).
In mitigation of Order 1047's apparent harshness, plaintiff does enjoy the possibility that there will be future explorations and development within SU K, the unit including his lands.
For the foregoing reasons, the findings and judgment of the trial court will be upheld.
All costs of these proceedings, both trial and appellate, are to be paid by the plaintiff-appellant, Vince Dunn, Sr.
AFFIRMED.